## NEW HAVEN PULP & BOARD CO. v. DOWNINGTOWN MFG. CO.

(Circuit Court, D. Connecticut. June 8, 1904.)

No. 539.

1. FOREIGN CORPORATIONS—JURISDICTION OF FEDERAL COURT—LAW GOVERNING.

The question whether a federal court acquired jurisdiction over a foreign corporation defendant by the service made is one of general jurisprudence, to be determined by the federal law, and which cannot be affected by a state statute.

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

2. SAME—VALIDITY OF SERVICE—DOING BUSINESS IN STATE.

An officer and authorized agent of defendant, a manufacturing corpora-
tion of another state, was in Connecticut on business connected with a con-
tract made with plaintiff by the predecessor of defendant, to whose rights
and liabilities it had succeeded, when he was served with summons in an
action brought by plaintiff against defendant in the federal court for Con-
necticut for breach of the same contract. Neither defendant nor its pre-
decessor had ever maintained an office or agent in Connecticut, but they
had made a number of sales in the state, including the one to plaintiff
which was in controversy. *Held*, that the service was good, and gave the
court jurisdiction of defendant.

At Law.  On plea in abatement and to the jurisdiction.

A plea in abatement and to the jurisdiction having been filed, the issue
came on to be heard upon the following stipulated facts:

(1) The plaintiff is a Connecticut corporation located in New Haven, and
engaged in the business of manufacturing cardboard and card middles.

(2) The defendant corporation was organized under the laws of Pennsylvania
in January, 1903, for the purpose of taking over the plant and business
formerly carried on by a so-called limited partnership by the name of the
Downingtown Manufacturing Company, Limited. The defendant did take over
said plant and business, and has assumed the liabilities of its predecessor, and
the stockholders and officers of the defendant corporation are the same as
those of its predecessor. Said corporation is, and its predecessor was, located
in the town of East Downingtown, Pa., and engaged in the manufacture of
paper machines, and equipment of paper, pulp, and cardboard mills.

(3) The defendant has never been a corporation organized under the laws
of the state of Connecticut, has never had an office actually located in the
state, and has never appointed, in writing or otherwise, any person as its agent
or attorney within the state, upon whom process might be served.

(4) The defendant's predecessor has purchased machinery from the New
Haven Manufacturing Company, a Connecticut corporation located in New
Haven, to the value of $9,151.94, at different periods from 1895 to January,
1903, and the officers and agents of the defendant's predecessor have visited
New Haven for the purpose of selecting and ordering said machinery, and
have made contracts for the same.

(5) The defendant's predecessor and the defendant have sold machinery to
the value of $43,211.21 in said state of Connecticut to the following concerns:
McArthur Bros., Danbury; C. H. Dexter & Sons, Windsor Locks; F. H.
Whittelsey, Windsor Locks; Emerson Manufacturing Company, for the Anchor
Mills, Windsor Locks; the New Haven Pulp & Board Company, New Haven;
Tait & Son, Bridgeport; Walker Manufacturing Company, Burnside; Ingalls
& Co., South Manchester. All of the above sales were made prior to January
1, 1903, except the following sales in 1903 made by the defendant corporation
to the plaintiff: May 2d, knife bar, $35; May 6th, drier head, $20.63; May
11th, sleeve and friction pulley, $12; May 15th, two drier frames, $22; June
4th, one box and cap, $10—which were ordered by letter, and shipped to the
plaintiff.

(6) During the year 1901 the defendant's predecessor contracted with the
plaintiff to equip and furnish its mills in New Haven with a certain paper
machine, and with three Miller Duplex Beating Engines; said machinery con-
stituting a substantial part of the plant of the New Haven Pulp & Board
Company, which was then beginning business. During said year of 1901 the
agents and officers of the defendant's predecessor were in New Haven for the
purpose of negotiating in regard to the contracts for said machinery, which
contracts were actually made, and for the purpose of supervising the installa-
tion of said machines in the plaintiff's mills.

(7) A difference having arisen between the plaintiff and defendant's prede-
cessor as to the performance by it of its contract for said machines, Guyon

---

¶ 2. Service of process on foreign corporations, see note to Eldred v. American
Palace Car Co., 45 C. C. A. 3.

Miller, secretary of the defendant's predecessor, came to New Haven in January, 1902, to adjust said differences.

(8) On that occasion a check for $1,500 and a note for $3,000, payable in New Haven, were given in settlement of said differences. The defendant's predecessor indorsed said note to the New Haven Manufacturing Company in payment of machinery ordered by it. The note was presented for payment by the New Haven Manufacturing Company, and payment refused by the plaintiff on the ground that the note was given upon certain conditions, which had not been fulfilled.

(9) The New Haven Manufacturing Company thereupon brought suit upon the note in its own name, though the expense of defending said action was borne by the defendant's predecessor. Said action was decided in favor of the New Haven Manufacturing Company, the nominal plaintiff, and on appeal to the Supreme Court of Errors for the state of Connecticut the judgment was affirmed. Both Mr. Miller, the secretary and treasurer of the defendant's predecessor, and Mr. Tutton, chairman of the defendant's predecessor, were present in New Haven at the trial of said cause, and said Miller was a witness therein.

(10) On August 7, 1903, the said A. P. Tutton, at that time president of the defendant company, stopped in New Haven, and visited the office of the New Haven Manufacturing Company, where he met Leslie Moulthrop, secretary and treasurer of said New Haven Manufacturing Company; the New Haven Savings Bank, where he.met Robert A. Brown, president of said New Haven Manufacturing Company, and talked with him in a general way concerning machinery to be ordered from said company, and about the litigation aforesaid; the office of Bristol, Stoddard, Beach & Fisher, attorneys for the said New Haven Manufacturing Company in the litigation aforesaid, and conferred with them concerning their bill in said litigation, and the disposition of the proceeds of the judgment, which at that time was paid by the plaintiff. Said Tutton arrived in New Haven at or about 6 o'clock in the evening of August 6th, and left New Haven for Northfield, Mass., at or about 10 o'clock on the morning of August 7th, to attend the Annual Christian Endeavor Conference to be held at that place. The said Tutton was not present in New Haven for any other than the purposes aforesaid.

(11) The said A. P. Tutton, upon whom the service of writ was made, is a citizen of, and resident in, the state of Pennsylvania, and was not, and never has been, a citizen of, and resident in, the state of Connecticut.

(12) The present suit is brought for an alleged breach of warranty on the part of said defendant's predecessor in connection with its contract with the plaintiff for the machinery aforesaid, and service was made in the same by placing a true and attested copy of the writ and complaint herein in the hands of said Tutton while present in New Haven on the 7th day of August, 1903, as aforesaid.

*Watrous & Day,* for plaintiff.
*Bristol & Stoddard* and *Beach & Fisher,* for defendant.

PLATT, District Judge (after stating the facts as above). It is contended that the service would have been good under section 571, Gen. St. Conn. Revision 1902, but the question here is one of general jurisprudence, and the federal court is not bound by the action of the state court in a similar situation. The jurisdiction of this court depends upon the acts of Congress relating thereto, and cannot be enlarged or abridged by a state statute. Goldey v. Morning News Co., 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517.

It is conceded that Mr. Tutton was the qualified agent of the defendant. One question alone remains, and, for safety's sake, that will be made narrower than might in another case be necessary. Was the agent in New Haven on business of his corporation when the papers in this suit were placed in his hands? We must look into

the stipulated facts for the answer; premising that this plea is not looked upon with favor, and that defendant's contention must be clearly established. The court did not invite the cause, but it is here, and, unless an inexorable sanction exists, it is not inclined to force a domestic corporation to migrate to a foreign forum in search of justice. It would seem ungracious for the defendant to permit its agent to visit Connecticut concerning matters which touch one branch of a transaction, and to object to service upon such agent of a notice that the plaintiff seeks to recoup in one direction what it has lately lost in another. The stipulation sufficiently states acts of business done by the defendant to sustain the validity of the service. Certain articles were sold by the defendant to the plaintiff which were confessedly to be used upon, and in connection with, the very plant over which this dispute arises. Further than that, the defendant corporation, through its agent, was attending to business which cannot be divorced or distinguished from the original contract. It had made that contract its own, and Mr. Tutton was in New Haven concerning the same. It had absorbed a limited copartnership of the same name, composed of and officered by the same parties. It is very technical to insist that the corporation had acquired every prerogative and obligation of the copartnership, except the duty of responding to the demands of the plaintiff in a sister sovereignty. During the transfer of entities such an obligation ought not to evaporate so easily. It was dealing with matters turned over to it by its predecessor, and, until the exploitation is final, it is not fair to stand aside and await events in its home state. Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113, is not persuasive. It is simply a reaffirmance of Goldey v. Morning News Co., supra. The matter then in controversy was entirely with the defendant corporation, and the fact that officers and stockholders were same as those of a former company could not affect in any way the transactions of the new company. The attempt then was to show that fraud in the formation of the new corporation vitiated the transfer. The Supreme Court found no facts upon the record sufficient to enable it to overrule the master's report as sustained by the Circuit Court.

It is impossible to assent to the proposition that doing business within a state means a persistent or continuous condition of doing or offering to do business, usually leading to the appointment of an agent or the establishment of an office within the state. Doe v. Springfield Boiler Mfg. Co., 104 Fed. 684, 44 C. C. A. 128, is not in point. That matter was in admiralty, and the meaning of a California statute was in discussion. The law is clear that a monition in admiralty can be served in accordance with a state statute. In re Louisville Underwriters, 134 U. S. 493, 10 Sup. Ct. 587, 33 L. Ed. 991. In St. Louis Wire Mill Co. v. Cons. Barbed Wire Co. (C. C.) 32 Fed. 802, the facts are illuminating. The defendant, through its agent, Henley, purchased wire of the plaintiff, and trouble arose about the payment. Thereafter Henley, with his wife, attended the St. Louis Fair. He was called upon at his hotel in relation to an adjustment of the old account. The parties failed to agree. Henley asked casually for a quotation on wire at the office of the plaintiff, but none was given. Under the

Missouri laws, the service was good. Having such a transaction in mind, Judge Thayer held, as it seems to me quite properly, that in the federal law the carrying on of business within a state means something more than a casual or occasional purchase of goods; that the business must be continuous, or "at least of some duration." The conclusion would have fitted the facts if he had used the word "isolated" instead of the words "casual or occasional." In Louden Machinery Co. v. Am. Malleable Iron Co. (C. C.) 127·Fed. 1008, the defendant, as in the Goldey Case, supra, did no business in the state.

The cases involving interstate commerce relate to attempts on the part of the states to forbid or regulate the doing of certain business within their borders. It strikes the court as a non sequitur to say that, because the state cannot forbid or regulate the transaction of interstate trade, the federal court loses the right to acquire jurisdiction of the defendant when it comes within the state on matters connected with the transaction. At best, such reasoning could only serve in an attack upon the state statute, and becomes futile when addressed to a forum which has ample jurisdiction in respect of interstate trade.

Let the plea in abatement and to the jurisdiction be overruled, with costs.