NOEL CONST. CO. OF BALTIMORE CITY v. GEORGE W. SMITH & CO., Incorporated.

(Circuit Court, D. Maryland. December 1, 1911.)

1. CORPORATIONS (§ 507*)—ACTIONS AGAINST CORPORATIONS—OFFICERS ON WHOM SERVICE MAY BE MADE.

The vice president of a corporation, who represented it in the making of a contract, is an officer on whom service may be made in an action against the corporation, for breach of such contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1971–2000; Dec. Dig. § 507.*

Service of process on foreign corporations, see notes to Eldred v. American Palace-Car Co., 45 C. C. A. 3; Cella Commission Co. v. Bohlinger, 78 C. C. A. 473.]

2. CORPORATIONS (§ 662*)—FOREIGN CORPORATIONS—LIABILITY TO SUIT.

A corporation of one state is liable to suit in another state only when it is doing business therein either generally or specially.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2568–2570; Dec. Dig. § 662.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**8.** COURTS (§ 274*)—FOREIGN CORPORATIONS—LIABILITY TO SUIT.

Plaintiff, a Maryland corporation, and defendant, a Pennsylvania corporation, which was a contractor for building work, entered into a contract in Maryland to be performed by defendant in Illinois. In the making of such contract defendant was represented by its vice president. A controversy having arisen between the parties, defendant's vice president visited Baltimore to effect a settlement, and while there was served with summons in an action against defendant for breach of the contract. Defendant had no office in Maryland and had done no work in the state for several years, although it had continued to solicit contracts therein. *Held*, that it was not doing business in the state either generally or specially in such sense as to be subject to an action in a federal court therein on the contract.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. § 274.*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke Collender Co., 72 C. C. A. 622.]

At Law. Action by the Noel Construction Company of Baltimore City against George W. Smith & Company, Incorporated. On motion to quash summons. Motion sustained.

J. Kemp Bartlett, for plaintiff.
Thomas Mackenzie, for defendant.

ROSE, District Judge. The plaintiff is a Maryland, the defendant a Pennsylvania, corporation. The marshal's return shows that the defendant was summoned "by service on Rayburn Clark Smith, its vice president, and copy summons left with him at Baltimore, Maryland, August 28, 1911." On the 19th of September, 1911, and before the day at which the defendant was required by the rules of this court to plead, it appeared specially for the sole purpose of moving to quash the writ of summons and to set aside the service of the same. In this motion it alleged: First, that it was not doing business in Maryland at the time the summons was served on its vice president; and, second, that he was not its agent within the state of Maryland competent to accept service of process on its behalf. The motion was heard partly on affidavits, partly upon oral testimony.

The plaintiff had agreed to build the Chicago city hall. The defendant made a subcontract with the plaintiff. It undertook for $197,-500 to do a portion of the cabinet work of that building. Negotiations leading up to this subcontract were for the most part carried on in the plaintiff's office in Baltimore. In these interviews the defendant was represented by its vice president, the same person upon whom service was made. The subcontract was signed in duplicate by the president of the defendant in Philadelphia. Its corporate seal was there affixed. The duplicate agreements were then taken by the defendant's vice president to the plaintiff's office in Baltimore. On the 19th of April, 1909, the day upon which they bear date, they were there executed by the plaintiff. One of them was retained by the plaintiff; the other handed back to the vice president of the defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the same interview the plaintiff and the defendant entered into a supplementary contract for the doing of additional work to the amount of some $8,000. This supplementary contract was altogether made and executed in the plaintiff's office in Baltimore. Defendant's vice president acted for it.

After the work called for by the subcontract had been finished, or after it should have been finished, a controversy arose between the plaintiff and the defendant. The plaintiff alleged certain breaches of the contract on the part of the defendant. To adjust and settle this controversy, if possible, the defendant sent its vice president to Baltimore on August 28, 1911. While he was there on such business, the plaintiff brought this suit to recover for such alleged breaches, and caused the service to be made.

Defendant had prior to 1907 done considerable business in Maryland. During the negotiations which led up to the making of the subcontract between it and the plaintiff, it referred the latter to the work done by it at the Marlborough and at the Washington apartment houses, and at the Eastern Female High School. All three of these are large buildings situated in Baltimore. All of them had been finished some two years before the contract sued on in this case was entered into and at least four years before this suit was brought.

Both before and after the making of the contract out of which this controversy arises, defendant solicited from the plaintiff subcontracts to be performed on buildings in Baltimore. These offers, as it happened, were not accepted. It has at all times been ready and willing to work in Maryland, but since 1907 it has, in point of fact, never done so. It has had no office in the state for years past, if it ever did have. At the time of the service of process on its vice president, it had no property in this state.

[1] I do not understand that the defendant now disputes that if it was suable in Maryland at all it would be bound by service on its vice president. He was one of its officers upon whom by the law of Maryland service of process against it could be served. He acted for the defendant in negotiating the contract out of which the suit grew. At the time of service he was in Maryland on the business of the defendant. That business was the settlement of the very matter in controversy in this suit. If the defendant could without its consent be sued in Maryland at all, it was bound by the service actually made. Connecticut Mutual Life v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Mutual Accident Co. v. Davis, 213 U. S. 256, 29 Sup. Ct. 445, 53 L. Ed. 782.

Jurisdiction of this court as a court of the United States depends upon the diverse citizenship of the parties, and upon that only. The suit might therefore be brought in either the district of the residence of the plaintiff or in that of the defendant. The plaintiff is a corporation of this district; nevertheless, the defendant says it is not suable in Maryland because it is not doing business in that state.

If the plaintiff had sued an individual citizen of Pennsylvania, process could have been served upon the latter whenever he could have been found in Maryland. It would have made no difference with what purpose he came into the state, unless the occasion had been one

of those which confer special and temporary exemption from liability to service of process.

[2] It may be conceded that Congress did not intend to make it harder for a plaintiff in his own district to sue a corporate, than an individual, defendant. Nevertheless it is harder. From the nature of things it must be. Individuals and corporations cannot be treated in all things alike for the simple reason that they are in fact not alike. It is impossible to ignore some of the practical consequences of the differences between them. An individual can never be in more than one district at any one time. If he is actually in the district of the plaintiff's residence, he may be there served with process. A corporation is an intangible thing. It is never physically anywhere. It may be constructively present in many different districts at the same moment. It is always to be found in the district in which it is chartered. It makes no difference how much or how little business it there transacts. It is absent from all other districts in which it does not in any sense transact business. Its officers and agents for their own business or pleasure may go where they will. They do not carry the corporation with them. It comes into a state so as to be liable to suit therein only when it is there doing business generally or specially. St. Clair v. Cox, 106 U. S. 359, 1 Sup. Ct. 354, 27 L. Ed. 222.

The defendant was not transacting business generally in Maryland at the time service was had upon its vice president. That it had some time before been here engaged in other business than that out of which this suit grew is immaterial. Such business had ceased before the suit was brought. Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 Sup. Ct. 728, 47 L. Ed. 1113.

It mattered not that it had solicited business in the state by correspondence or by personal interviews. Such solicitation did not constitute such a doing of business within the state as rendered it liable to suit therein. Green v. Chicago, Burlington & Quincy Ry. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916.

[3] Plaintiff does not question these principles. It says they do not govern the case in hand. As to it, it contends that the defendant was transacting special business in Maryland which made the latter liable to suit therein by it. From the plaintiff's point of view it is unimportant that the defendant might not then have been suable in Maryland by any other person.

A corporation may be doing business in a state of a kind and to an extent which will make it liable to suit by some persons and immune from suit therein by others. Hunter v. Mutual Reserve Life Ins. Co., 218 U. S. 586, 31 Sup. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686.

The contract sued on in this case was made in Maryland. It was made by the general agent upon whom process was served. When service was had, that general agent was in Maryland by the direction of the defendant conducting negotiations with reference to the particular controversy.

The plaintiff says that under such circumstances the defendant was at the time doing special business in the district of the plaintiff's resi-

dence. It was, according to the plaintiff's contention, in Maryland so far as this particular controversy is concerned.

It has not been determined what are the circumstances which will constitute the transacting of special business by a corporation so as to make it liable to suit in a state in which it is not then doing business generally.

The Supreme Court has recently said that the cases before it "have not defined the extent of the business necessary to the presence of a foreign corporation in a state for the purposes of a valid service. It is sufficient if it is doing business therein." Commercial Mutual Accident Co. v. Davis, 213 U. S. 256, 29 Sup. Ct. 445, 53 L. Ed. 782.

In that case, as in the previous case of Connecticut Mutual Life v. Spratley, supra, the court upheld service made upon an agent of the corporation sent into the state for the purposes of negotiating and settling the controversy out of which the suit grew.

In neither case did it appear from the record that the corporation was carrying on business generally in the state to such an extent and of such a character as to make it liable to suit by persons who were not parties to the controversy with reference to which the agent came into the state. Certainly in neither of those cases could process in other controversies have been validly served upon such agent so as to bind the corporation. It is true, on the other hand, that in each of the cases the corporate defendant was at the time doing some other business in the state. The defendant in each of the cases was an insurance company. It had some policy holders in the state who regularly paid it their premiums. The payment was apparently made by remitting through the mail to the company's office in another state.

In the case at bar, as has already been pointed out, the defendant was not at the time it was served with process transacting any business in Maryland other than the attempted settlement of the controversy in question. Whether the Supreme Court, in the two cases to which reference has been made, would or would not have held the corporation suable in the district had it not been at the time transacting other business therein, cannot with certainty be determined. In each case other business was being carried on. In each case the Supreme Court mentions that it was carried on. In each there was perhaps an implication that, had there not been such other business, jurisdiction could not have been maintained.

In the still later case of Hunter v. Mutual Reserve Life Ins. Co., supra, the court at least intimates that foreign corporations may be brought within the jurisdiction of the courts of the state where the business was done out of which the dispute arises.

In this case the contract was made in Maryland. It was to be performed in Illinois. The breach therefore took place in Illinois.

In the case of Maxwell v. Atchison, T. & S. F. R. Co. (C. C.) 34 Fed. 286, Judge, afterwards Mr. Justice, Brown, held that the cause of action on a contract arises, not where it is made, but where it is broken. If such be the case, the plaintiff is not helped by the doctrine which is suggested by Hunter v. Mutual Reserve Life Ins. Co., supra.

The precise question in this case has been raised a number of times. Different answers have been given to it. The earlier cases were decided before the enactment of the act of 1887 as amended by the act of 1888. When they were passed upon, the defendant could be sued in any district in which he could be found. Convenience and even justice required that the word "found" should be so construed as to protect a corporation from suit in a district in which it was not regularly and substantially doing business. It might have casual transactions in a dozen or in 50 different districts.

In this state of the statute law, Judge Wallace held that a corporation was not "found" in a state in which it had never kept an office or carried on any part of its business operations or been engaged in any business which required it to invoke the comity of the state laws. In his view it made no difference that it had occasionally sent its officers and agents into the state to make purchases, and that, a dispute arising as to one of such purchases so made, its president came into the state to attempt to settle the controversy and was there served with process against it in a suit growing out of the same transaction. Good Hope Co. v. Railway Barb Fencing Co. (C. C.) 22 Fed. 635.

Under similar circumstances, Judge Thayer held that a corporation was not found in a state unless therein, through the medium of agents appointed for that purpose, it carried on business operations which were continuous or at least of some duration. It was not sufficient that it had casual business transactions such as an occasional purchase of goods or materials in the foreign state.

In that case, as in the one at bar, suit grew out of a casual transaction within the state, and an officer of the corporation was served while in the state engaged in attempting to adjust the controversy. St. Louis Wire-Mill Co. v. Consolidated Barb Wire Co. (C. C.) 32 Fed. 802.

Mr. Justice Brewer on circuit, Judges Love and Shiras concurring, went even farther, and held that a corporation is not found in any state unless in some way it therein establishes an office or agency for the transaction of the business for which it is organized. Carpenter v. Westinghouse Air Brake Co. (C. C.) 32 Fed. 434.

This last decision was largely influenced by the language of the Iowa statute. In any event, it appears to lay down a different and much stricter rule than that which has received the approval of the Supreme Court in some of the cases already cited.

Since the passage of the act of 1887, the defendant can never be liable to suit on any one transaction in more than two districts. It may be sued in the district of its residence; that is, in the district in which it is chartered. If service can be had upon it, it may be sued in the district of the plaintiff's residence. It may be inconvenient for the plaintiff to bring suit in the home district of the defendant corporation. It may be inconvenient for it to be sued in the district of the plaintiff's residence. One party or the other will in any event be inconvenienced. Congress has thought that it makes no great difference which it may be. Accordingly, some judges have held that, whenever a corporation sends an agent into the district of the plaintiff's residence

and authorizes him to represent it in a particular transaction. it voluntarily comes into the district with reference to that transaction. It is bound in their opinion by service of process upon such agent.

Such was the conclusion of Judge Grosscup in Houston et al. v. Filer & Stowell Co. (C. C.) 85 Fed. 757; of Judge Platt in New Haven Pulp & Board Co. v. Downingtown Mfg. Co. (C. C.) 130 Fed. 605; and of Judge Amidon in Brush Creek Coal & Mining Co. v. Morgan-Gardner Electric Co. (C. C.) 136 Fed. 505.

On the other hand, in a great many cases decided under the law as it now is, it has been held expressly or in effect that a corporation is not liable to service of process in any district in which it would not have been found under the old law. In a number of these cases the facts presented to the court raised substantially the same question as is now raised at bar. Clews v. Woodstock Iron Co. (C. C.) 44 Fed. 31; United States Graphite Co. v. Pacific Graphite Co. (C. C.) 68 Fed. 442; Louden Machinery Co. v. Malleable Iron Co. (C. C.) 127 Fed. 1008; Wilkins v. Queen City Savings Bank & Trust Co. (C. C.) 154 Fed. 173; Ladd Metals Co. v. American Mining Co., Ltd. (C. C.) 152 Fed. 1008; Hoyt v. Ogden Portland Cement Co. (C. C.) 185 Fed. 889.

It is desirable that a uniform rule shall be established on this question.

The latest cases are against the validity of the service in this case.

Where the question of jurisdiction is gravely in doubt, it is usually best to decline it. If it be taken by the judge at nisi prius, the appellate tribunal may differ from him. In such a case a long and expensive trial may go for naught. Moreover, by the time it is finally settled that there is no jurisdiction in the court in which the suit was brought, the statute of limitations may prevent its being instituted elsewhere.

Under these circumstances and on these grounds, I, with some hesitation, sustain the motion to quash. In so doing I have assumed, but have not decided, that under the law of Maryland, as embodied in section 67 of article 23 of the Code of Public General Laws, as amended by the act of 1908 (Laws 1908, c. 240), this suit could be brought against the defendant corporation in Maryland. Upon such assumption it is unnecessary to consider the doctrine laid down in United States v. American Bell Telephone Co. et al. (C. C.) 29 Fed. 17. There Judge, afterwards Mr. Justice, Jackson, held that a foreign corporation could not be sued in the federal courts in any state, unless, among other things, there existed some local law making such corporation, or foreign corporations generally, amenable to suit therein as a condition express or implied of doing business in the state. He further held in effect that, unless the corporation was suable in the state court under the state statute, it could not be sued in the federal court in that district.

In Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 30 Sup. Ct. 125, 54 L. Ed. 272, the Supreme Court says that:

"In cases which concern the jurisdiction of the federal courts, notwithstanding the so-called conformity act, Revised Statutes, § 914 [U. S. Comp. St. 1901, p. 684], neither the statutes of the state nor the decisions of its courts

are conclusive upon the federal courts. The ultimate determination of such questions of jurisdiction is for this court alone."

It is not necessary to inquire whether the doctrine of Judge Jackson and the recent ruling of the Supreme Court can be harmonized. It may be that the suit may never be brought in the federal court unless it could under state statutes and decisions have been brought in the state court. It may, nevertheless, be true that there may be cases in which under those statutes and decisions it could be there brought but in which the federal courts will hold that the foreign corporation is not liable to suit.

For the same reasons which influenced Judge Jackson to act, in like manner, I have not considered whether the marshal's return was defective on its face. It does not show or purport to show that the corporation was in any sense within the district.