## HENRY M. DAY & CO., Inc., v. SCHIFF, LANG & CO.

(District Court, S. D. New York. October 10, 1921.)

1. **Removal of causes ⚖114—Cause comes to federal court in same condition as when petition for removal was filed.**

   Where at the time a cause was removed a referee of the state court had filed a report on a motion to quash the service, such report is before the federal court for consideration on the motion.

2. **Courts ⚖344—Federal courts not bound by state decisions on question of validity of service of summons.**

   The validity of the service of summons in a suit in a federal court, whether commenced in or removed to that court, is to be determined in accordance with the decisions of the United States courts, and not those of the state in which the service is made.

3. **Corporations ⚖668(7)—Corporation held not "doing business" in another state because officer went to state to adjust controversy relating to its business, so as to subject it to suit by service on him.**

   The fact that an officer of a California brokerage corporation, through which orders had been placed with a California fruit-packing company for goods to be delivered f. o. b. in that state for shipment to customers in New York, came to New York for the purpose of adjusting a controversy between the shipper and one of such customers, held not to constitute doing business by defendant in New York, which subjected it to suit in that state by a third party by obtaining service on such officer while there.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

At Law. Action by Henry M. Day & Co., Inc., against Schiff, Lang & Co., a corporation. On motion by defendant to set aside and vacate summons. Granted.

Greenbaum, Wolff & Ernst, of New York City (Terence J. Mc-Manus, of New York City, of counsel), for plaintiff.

H. & J. J. Lesser, of New York City (Abraham Tulin, of New York City, of counsel), for defendant.

HOUGH, Circuit Judge. This case was removed after an official referee (sitting like a special master) had filed a report which was intended to present the facts as to the business relations of the parties plaintiff and defendant and the reason for the presence within the state of New York of that officer of defendant upon whom physical service of the summons was made.

[1] Of course the case comes to this court in the same plight and condition that it was in when the petition and bond on removal were filed in the state tribunal. Consequently I have now before me a master's report, together with certain evidence. It is to be treated just as if this court had ordered the reference. That this should be done is the burden of the affidavit filed on this motion by plaintiff's attorney. The making of that affidavit was wholly unnecessary; the matter is one of law.

The facts shown are few and simple. Plaintiff is a corporation of New York, defendant one of California; both are engaged in the business of brokerage—they may have other branches of business, but that is immaterial. Stern & Sons is likewise a California corporation, whose business is the canning of fruit and vegetables.

Shortening corporate names for the sake of brevity, Schiff appears to have a rather close, if not confidential, relation with Stern, so that through Schiff Stern endeavored to market much, if not all, of his canned product. In the search after customers, Schiff proposed in substance to Day that in respect of whatever business Day might pick up for Stern he (Day) could order through Schiff, and then Schiff and Day would split the commission. But every possible customer, whether discovered by Schiff or Day, was subject to the approbation of Stern, the actual sale was by Stern to the customer, and the goods were shipped f. o. b. a point in California. Whether the commission on a sale to a customer accepted by Stern depended in any degree upon the question whether the customer paid up or not does not appear.

Considerable amounts of goods were thus sold in and near New York —at all events to persons in New York. One, at least, rejected a considerable consignment of canned fruit on the ground of quality; an officer of the Schiff corporation came to New York, undoubtedly to straighten the thing out if he could. He says he came as "special representative of Stern"; whether this legal inference is true or not is in my judgment immaterial. While in New York City this officer also visited firms or places of business other than that of the recalcitrant customer and of Day; he doubtless would have been glad to pick up any other business that he could, but it is plain that the rejection of the above referred to canned fruit was a sufficient reason and *the* reason for his visit to the city.

The ordinary indicia of "doing business" in any given locality are all lacking in respect of defendant's activities in New York. It has no

office here, no agent, no salesman. Of course, it had never taken out any license to do business in this state. Its relations with plaintiff amounted to this: That if plaintiff could find customers who would buy of Stern and take delivery in California, plaintiff and defendant would split a commission. When defendant's officer came to New York City for the purpose above set forth plaintiff served a summons in the state Supreme Court upon him. The exact nature of the plaintiff's alleged cause of action does not appear, for no complaint has ever been served; but it is admitted all round that it grows out of differences of opinion as to the amount or extent of the fractional commission to which plaintiff conceived itself entitled.

[2] When a motion was made in the state court to set aside this service the judge then presiding in the motion part sent the matter to the official referee to ascertain whether the facts brought the matter within Tauza v. Susquehanna, etc., Co., 220 N. Y. 259, 115 N. E. 915, and the learned referee has briefly said that he thinks that case applies. The Tauza Case is not the last word from the Court of Appeals of New York. The process of receding from the doctrine of Pope v. Terre Haute Car Co. is still going on; but it is not necessary, nor is it permitted, for me to speculate on the question as to whether this service was good under the latest state decisions. The last word from the Supreme Court of the United States is Chipman v. Jeffrey Co., 251 U. S. 373, 40 Sup. Ct. 172, 64 L. Ed. 314. That was a removed case from this district and (251 U. S. at page 379, 40 Sup. Ct. 173, 64 L. Ed. 314) the Supreme Court said:

"We do not wish to be understood that the validity of [the] service would not be of federal cognizance whatever the decision of a state court."

In other words, the rules for good or bad service of the summons in even a removed case is something to be passed on in accordance with the decisions of the United States courts and not those of the state wherein the service is made.

[3] What is meant by doing business in a given state or other locality is something approached from so many angles that the subject appears a mass of confusion. "Doing business" for purposes of taxation; doing it within a statute requiring licenses, and doing enough business to justify the service of process are quite different things. The use of the same phrase makes confusion.

On the subject of service of process it has been consistently held in this circuit that occasional, sporadic, or single pecuniary transactions by foreign corporations in a given locality do not constitute doing business within the rule as to service of process, for that rule declares that "the essential thing is that the corporation shall have come into the state." Chipman v. Jeffrey, supra, 251 U. S. page 379, 40 Sup. Ct. 173, 64 L. Ed. 314. What constitutes coming into the state is a question of fact, and how absurd is the proposition that when business relations are normally carried on by mail a visit of adjustment "brings the corporation within the state" is fully shown by Judge Lacombe's recital of facts in his master's report (Bank of America v. Whitney, etc., Bank) found in the Law Journal of August 25, 1921. The course of decisions in this circuit may be instanced by the following cases: New

Haven, etc., Co. v. Downington Co. (C. C.) 130 Fed. 605; Cody, etc., Co. v. Warren, etc., Co. (D. C.) 196 Fed. 254; Wilkins v. Queen, etc., Co. (C. C.) 154 Fed. 173; Buffalo, etc., Co. v. Manufacturers, etc., Co. (C. C.) 142 Fed. 273; Hunau v. Northern, etc., Corp'n (D. C.) 262 Fed. 181. The decision in Chipman v. Jeffrey affirmed this court in proceeding along the lines of the cases just cited. Judge Rose's opinion in Noel, etc., Co. v. Smith & Co. (C. C.) 193 Fed. 492, etc., is a thoughtful summary of the decisions down to date.

As Judge Lacombe in his master's report points out, the Supreme Court has purposely (it would seem) refused to attempt hard and fast definition of just what "doing business" is. Every case stands on its own facts. But one point may be asserted positively, viz. that even the president of a corporation which does not do business in a given locality does not carry his corporation around "under his hat"—which was the doctrine of Pope v. Terre Haute Car Co.

One must be able to say that a foreign corporation is doing business in New York when every officer, agent, or servant of that corporation is outside the state, before it can be said to be doing business in the same state when the president comes to town to settle some point with a correspondent. Any other view would (as has been well said) subject almost every incorporated concern doing a large business to suit all over the country unless all that corporation's officials religiously stayed at home.

It follows that the question may be put this way: Was Schiff's company doing business in New York before any representative of it came into the state? It was not, unless one thinks that every New Yorker who orders goods from California is thereby doing business in California. In a certain sense he is doing business by the act mentioned, but not in the legal sense, nor for purposes of service upon corporations within the cases cited.

The question is always one of fact; things small in themselves may incline the scale one way or the other. This point is well illustrated by Judge Knappen's discussion of the matter in Empire, etc., Co. v. Lyons, 257 Fed.. 890, 892, 169 C. C. A. 40.

The motion as made is granted, and final judgment of dismissal is ordered for the defendant.