CHAUNCEY DEWEY *et al., as Executors, etc., et al.,* v. H. J. BARNHOUSE.

No. 14,883   (88 Pac. 877.)

SYLLABUS BY THE COURT.

PRACTICE, DISTRICT COURT—*Special Findings Unsupported by any Evidence—New Trial.* Where in a trial by a jury special findings of fact are returned with the general verdict, and it appears from the answers to the special questions submitted that the undisputed evidence in the case was disregarded to such an extent as clearly to indicate that the case was not fairly considered, the verdict and special findings should be set aside and a new trial granted.

Error from Riley district court; SAM KIMBLE, judge. Opinion filed February 9, 1907.   Reversed.

*Robert J. Brock,* and *Harkless, Crysler & Histed,* for plaintiffs in error.

*John E. Hessin,* and *John C. Hessin,* for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: This suit was commenced November 8, 1904, by H. J. Barnhouse, in the district court of Riley county, to determine the ownership of twenty-five shares of stock in the Manhattan Building and Savings Association. Judgment was entered for the plaintiff, and defendants bring the case here for review.

The plaintiffs in error are the executors and the administrator of the last will and testament of C. P. Dewey, who died while a resident of Cook county, Illinois, June 10, 1904. The will was probated and the executors appointed by the probate court of Cook county, where the estate of the testator is being administered. The certificate of stock in controversy was in the possession of Mr. Dewey at the time of his death. It was found by the executors among the papers of the deceased, and has ever since been in their possession. While they were temporarily present in Riley county,

Kansas, this suit was commenced by the defendant in error, who caused summons to be served therein upon the executors personally.

The first question presented in the case is one of jurisdiction. The plaintiffs in error claim that the courts of Kansas cannot acquire jurisdiction over personal property located in another state so as to adjudicate the title thereof, and it is urged that this rule applies with especial and peculiar force when the property belongs to an estate which is in course of administration in the proper court of such other state. As a sequence of this proposition it is contended that an action against foreign executors or administrators cannot be maintained in the courts of this state, except when there is property in the jurisdiction of the court, and then only for the disposition of such property. The solution of this question depends upon the statute of each state, and the legislature of Kansas has relieved its courts of the difficulties which they might otherwise encounter by a clear and comprehensive statute upon this subject, which reads:

"An executor or administrator duly appointed in any other state or country may sue or be sued in any court in this state, in his capacity of executor or administrator, in like manner and under like restrictions as a non-resident may sue or be sued." (Gen. Stat. 1901, § 3009.)

Under this statute actions against foreign executors or administrators for the purpose of subjecting the property of the estate to the payment of debts by attachment, and for the foreclosure of mortgages, have been upheld where the only service upon the defendants was obtained by publication, as in ordinary cases. (*Cady v. Bard,* 21 Kan. 667; *Ravenscraft v. Pratt,* 22 Kan. 20; *Manley v. Park,* 62 Kan. 553, 64 Pac. 28; *Manley v. Mayer,* 68 Kan. 377, 75 Pac. 550; *Eells v. Holder,* 2 McCrary [U. S.], 622, 12 Fed. 668.) In the cases of *Manley v. Park,* and *Manley v. Mayer* this question was fully considered. The authorities are there cited and discussed.

While the cases heretofore decided by this court under the statute above quoted involved the taking of property located within the state, we do not think they exhaust the power conferred upon the courts by that section. On the contrary its language clearly provides that foreign executors or administrators may be sued the same as ordinary non-residents, and that the action may be brought against them in their capacity as executors or administrators. This furnishes a clear and easily understood rule. Ordinarily a non-resident may be sued whenever the service of a summons can be had upon him within the state. When such service has been made the court obtains jurisdiction of him as completely as if he were a resident citizen. The same rule applies to foreign executors and administrators.

It has been suggested that the judgment cannot be enforced because the property in controversy is not within the jurisdiction of the court. This may be a matter of serious concern on the part of the plaintiff, but we see no cause for complaint from the defendants on that account.

Whether or not a non-resident defendant, in a personal action commenced while he is temporarily within the state, has available assets out of which the court can satisfy the judgment when obtained is immaterial. As we have seen, the same rule applies to foreign executors and administrators. Courts may not withhold rights expressly conferred by statute because difficulties can be anticipated in the complete enforcement thereof. In this case all the parties interested in the subject-matter of the suit were personally present in court. The matters in controversy are of a purely personal nature, and we see no reason why, under the provisions of the statute, the suit could not be maintained.

The plaintiffs in error further claim that the district court committed material error on the trial of the case. This contention will be understood more clearly if considered in connection with some of the facts shown by

the evidence.   C. P. Dewey, prior to May, 1900, had re-
sided at Manhattan, and conducted large business in-
terests in that vicinity.   He removed to Chicago, but
retained control of his Kansas business.   In May, 1900,
while on a visit to Manhattan, he purchased 100 shares
of stock in the Manhattan Building and Savings As-
sociation.   The by-laws of the company provided that
no member should hold or control more than twenty-
five shares.   Dewey had twenty-five shares issued to
himself, twenty-five to his son, Chauncey, twenty-five
to his private secretary, and twenty-five were taken in
the name of his employee, H. J. Barnhouse, the de-
fendant in error, who afterward indorsed the certifi-
cate in blank.   Dewey held possession of the certificate
and paid all dues thereon until his death, when it was
found among his papers by his executors.   The de-
fendant in error claims that the stock was purchased
and presented to him as a gift by Dewey, who after-
ward retained possession of the certificate in trust, and
paid the dues thereon for defendant in error's benefit.
The executors, plaintiffs in error, claim that Dewey
took the certificate of stock in the name of Barnhouse
because under the by-laws of the association he could
not hold it in his own name, and that Barnhouse in-
dorsed it in blank to accommodate Dewey.   Therefore
the sole question presented to the jury was whether or
not the transaction amounted to a gift.

The principal error presented is the refusal of the
court to set aside the special findings of fact returned
by the jury, which read:

"(1)  Ques.  Was the certificate of stock delivered to
Barnhouse in the bank at the time the stock was is-
sued?   Ans.  Yes, but held in trust by C. P. Dewey for
H. J. Barnhouse.

"(2)  Q.  Did Barnhouse ever have possession of said
stock?   A.  Yes.

"(3)  Q.  Didn't Barnhouse indorse said stock in
blank to Mr. Dewey?   A.  No.

"(4)  Q.  Has said stock been continuously in the
possession of Mr. Dewey and his executors since it was
issued?   A.  Yes, as trustee for H. J. Barnhouse.

"(5) Q. Where was said stock found at the time of Mr. Dewey's death? ' A. In C. P. Dewey's private box in Chicago.

"(6) Q. Where had it been continuously since it was issued until Mr. Dewey's death? A. Supposed to be in the private box of C. P. Dewey, in Chicago.

"(7) Q. Did Mr. Dewey, from time to time, have trial-balances made in which this certificate of stock was included as a part of his property? · A. No."

The importance of these special findings will be apparent when it is understood that the decision of the case depends upon two propositions: (1) Was there a gift of the stock in question by Dewey to Barnhouse? (2) If so, was it afterward transferred by Barnhouse to Dewey?

In every gift of personal property there must be a delivery by the donor of the thing donated to the donee or to some person for him. The delivery need not be actual; it may be constructive. In this case Dewey did not part with the possession of the certificate of stock in controversy by delivering it to the defendant in error or any other person, but retained the actual custody thereof continuously after it was issued. The question of actual delivery is therefore eliminated. If there was a constructive delivery to some person for Barnhouse, that person must have been Dewey himself. There is no direct evidence, however, upon which to base this conclusion; the only way it can be drawn from the evidence is forcibly to infer it from the circumstances of the transaction, which the jury did by its answer to special question No. 1.

There is no evidence, direct or indirect, to support the answer in the second special finding of fact. The answer to the third question is contrary to the only evidence in the case on the subject. The only evidence upon this point was that of Barnhouse himself, who stated positively that he indorsed the certificate by writing his name thereon. On this point he, in part, said:

"Ques. I will ask you to state, Mr. Barnhouse,

whether or not that is your indorsement on the back of that certificate. Ans. Yes, sir.

"Q. I will ask you to state if you have any knowledge or any recollection of having put it there. A. I have not."

"Q. It is your signature, however? A. Yes, sir.

"Q. And there must have been some purpose in putting it there, was n't there? A. I suppose so.

"Q. You don't recall now just what it was? A. No, I don't.

"Q. But it would indicate to you that there was some purpose in your signing that stock? A. Yes."

There was nothing in the case inconsistent with this testimony; not a circumstance was shown tending to discredit the statements of the witness. The original certificate, with the name of H. J. Barnhouse indorsed thereon, was shown to the defendant in error and presented in evidence. Barnhouse further stated that he had been Dewey's employee for many years, and during that time deeds, notes, mortgages and other instruments had been taken in his name, and were by him conveyed, indorsed or assigned, as requested by Dewey; that these transactions were so frequent and so unimportant to him that they were soon forgotten. The transaction relating to the certificate in controversy was but dimly remembered by him; he knew nothing of the custody of the certificate since it was issued, and had made no inquiry as to whether or not the dues thereon had been paid.

The answer to the seventh question is also in direct opposition to the only testimony given on the subject. Dewey's bookkeeper was a witness and produced the books containing the accounts of decedent's business transactions, in one of which the certificate in controversy, and those taken at the same time, were carried together as if they were all the private property of Dewey. This bookkeeper testified that trial-balances were made each month, in which these certificates were all shown together. This was all the evidence given on that subject.

These special findings cannot be sustained. Some of them are unsupported by any evidence, others are evasive and indefinite, and as a whole they appear to have been inspired by a determination to sustain the general verdict. The conclusions reached by juries upon questions of fact submitted to them are entitled to great consideration, and where they are sustained by any evidence trial courts seldom, and reviewing courts never, disturb them merely because they are not sustained by the evidence. Juries may not, however, arbitrarily ignore the evidence presented to them and substitute their own personal wishes therefor. They are expected to consider the proofs before them fairly and dispassionately, and to make such findings of fact as may be justified thereby. Whenever it appears that the jury have been influenced, either because of a misconception of the evidence, on account of a misunderstanding of the law as stated by the court, or because of passion or prejudice, their special findings of fact and general verdict should be set aside.

The issues in this case are peculiar. A jury might easily misapprehend or fail fully to appreciate its real controlling facts.

Dewey was under no obligation, legal or moral, to give this stock to Barnhouse, and the latter does not claim that he was entitled to or expected such a gift. When Dewey received and receipted for the certificate and paid the price thereof he did not direct or authorize the secretary who issued the certificate to deliver it to Barnhouse, and therefore the delivery was made to Dewey, for himself, so far as the secretary was concerned. It is insufficient that Dewey at and immediately prior to that time had stated that he intended to give the stock to the defendant in error or that he was procuring it for him. An intent to give, however strongly and sincerely entertained, does not constitute a gift. Until the donor parts with the possession of the property the gift is incomplete. At the last moment before delivery the donor may change his mind. The

fact that the stock was taken in the name of Barnhouse does not necessarily constitute a delivery. It may have been so taken for the purpose of making a subsequent delivery thereof to him as a gift, or it may have been taken in his name merely for the convenience of Dewey, to be afterward indorsed by the defendant in error, as in the many other transactions spoken of by him.

Before a gift can be found in this case it must appear from the evidence that at some time during the transaction in the bank Dewey determined to give the stock to Barnhouse, and instead of delivering it to the latter, although present, and presumably willing to receive and accept it, concluded to constitute himself the trustee of Barnhouse, and thereupon, as donor, delivered the stock to himself, as trustee, receiving and accepting it for Barnhouse. Whether such a delivery is shown by the evidence is a question of fact for the determination of the jury, and great care should be taken by the court, both in the admission of evidence and in its instructions, to have this question of delivery clearly presented to the jury, and thereby avoid mistake or misconception of the real merits of the inquiry.

The judgment of the district court is reversed, for the reason that the special findings of fact returned by the jury show that, either on account of a misapprehension of the evidence or of passion and prejudice, they did not fairly consider the case. The court is directed to set aside the judgment, grant a new trial, and proceed with the case in accordance with the views herein expressed.