THORBURN v. GATES.

(District Court, S. D. New York. March 31, 1916.)

1. EXECUTORS AND ADMINISTRATORS ⊙╾524(1)—FOREIGN EXECUTORS—SUITS
    AGAINST—STATUTE—CONSTRUCTION.
    Code Civ. Proc. N. Y. § 1836a, providing that executors and administra-
    tors may sue or be sued in the state courts in like manner as nonresidents,
    is not meant to apply to reaching assets in the state of New York, but to
    permit the establishment of claims against foreign executors generally.
        [Ed. Note.—For other cases, see Executors and Administrators, Cent.
    Dig. §§ 2330–2333; Dec. Dig. ⊙╾524(1).]

2. EXECUTORS AND ADMINISTRATORS ⊙╾524(1)—FOREIGN EXECUTORS—SUITS
    AGAINST—STATUTE—SCOPE.
    Such being the purpose of the section, it will be limited to permitting
    suits to reach assets lying within jurisdictions which subject representa-
    tives of decedents to foreign suits, since otherwise the purpose of the
    section could not be validly effected.
        [Ed. Note.—For other cases, see Executors and Administrators, Cent.
    Dig. §§ 2330–2333; Dec. Dig. ⊙╾524(1).]

At Law. Action by Robert H. Thorburn against Dellora R. Gates,
as executrix of John W. Gates and as executrix of Charles G. Gates,
John F. Harris, John Lambert, and John Dupee. On motion to set
aside the service of summons. Motion granted conditionally.

This is a motion to set aside the service of a summons in an action at law,
brought under section 7 of the Sherman Act (Act July 2, 1890, c. 647, 26 Stat.
210 [U. S. Comp. St. 1913, § 8829]). The facts are substantially the same as in
a motion between the same parties reported in 225 Fed. 613; the only material
addition being that the testators are alleged to have owned large amounts of
real and personal property in the state of New York which came to their
executrix, and that her appointment in the state of Texas was irregular—a
point which was not, however, pressed upon the argument. The chief purpose
of the motion is to secure a reconsideration of the decision before made, upon
the theory that under the laws of the state of New York the only possible
remedy open to a domestic creditor against a foreign executor is through
section 1836a of the Code of Civil Procedure, and that therefore the section
is to be interpreted as authorizing such an action somewhat on the analogy
of an application by a creditor for administration of local assets.

A. L. Humes, of New York City, for the motion.
John S. Wise, Jr., of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as
above). [1] In the former case I suggested, but only to reject it, as a
possible interpretation of section 1836a of the Code, that it might have
been intended only as a way of applying local assets to the claim of a
local creditor, and therefore not as an effort to affect property situated
in another jurisdiction. The plaintiff, in response to that suggestion,
now says that under the law of New York he can collect his claim in
practically no other way than by an action under this section; if he
is right, and there be no other procedure applicable to his needs, no
means by which he can secure the appointment of an executor whom
he could later sue, much might be said for his theory. It can hardly be
just that a local creditor, who during the lifetime of the testator could

have effected good service anywhere in the Union, should be cut off from recourse to any court save that of testator's former residence as soon as he dies.

[2] Under section 2609 (formerly 2614) of the New York Code of Civil Procedure it is provided that a party to an action about to be brought may propound the testator's will for probate in New York, and upon proper citation may obtain its probate and a grant of letters testamentary to the executor. The existence of personal property in this state would be sufficient to support the jurisdiction of the court, and any creditor could sue the executor thereafter. If the foreign executor took out ancillary letters, as he may do, under article 2 of title 3 of chapter 18, the local creditor could sue him. It is true that there is a practical difficulty in the case at bar to the creditor's getting a local administration, because the will has already been probated in another jurisdiction and the original instrument cannot therefore be produced before the surrogate. Matter of Cameron, 47 App. Div. 120, 62 N. Y. Supp. 187, affirmed on opinion below 166 N. Y. 610, 59 N. E. 1120. However, in the case of Russell v. Hartt, 87 N. Y. 19, the court met this by saying that a commission will serve, if the witnesses come before the commissioner and the commissioner himself examines the will. Yet in Matter of Law, 80 App. Div. 73, 80 N. Y. Supp. 410, affirmed on opinion below 175 N. Y. 471, 67 N. E. 1084, the absence of the will was nevertheless thought insuperable, because the witnesses lived in a jurisdiction other than that where the original will was situated. Under that case, therefore, it probably is true that the plaintiff here could not procure a probate of the will under section 2609 of the New York Code.

However, section 1861 of that Code is a substitute for the old suit in chancery to establish a lost will, or one which is not available for probate, and the language is apt for the present case. The plaintiff has indeed brought such an action, which it still undetermined. In Clark v. Poor, 73 Hun, 143, 25 N. Y. Supp. 908, the General Term for the First Department held that such a suit would not lie where the will had been probated elsewhere; the proper remedy being by ancillary probate. Yet ancillary probate can be instituted only by the executor himself; at least it is not open to a creditor or to one who means to sue the executor. If Clark v. Poor, supra, be right, a creditor like the plaintiff here has no relief against local assets merely because the witnesses to the will chance to live out of Texas where the will is probated. That surely would be a capricious cast of fortune, and it is contrary to the dictum, anyway, of Matter of Law, supra, which was accepted by the Court of Appeals of that state when it accepted the whole opinion in affirming that case. It seems probable, therefore, that the plaintiff is wrong in supposing that his only remedy against local assets is by virtue of section 1836a allowing actions against foreign executors.

However that may be, nevertheless, it would be an unreasonable interpretation to put upon section 1836a to say that it were intended, as it were, to tail up the system of decedents' administration so elaborately detailed in the New York Code. If, under Matter of Law,

supra, there be a casus omissus, it was certainly not to provide against it that section 1836a was enacted, whose language is general in form and cannot possibly be thought to apply so specifically. Moreover, the law of New York certainly contemplates the superintendence of the Surrogate's Court over all proceedings to reach decedents' assets (Bostwick v. Carr, 165 App. Div. 55, 151 N. Y. Supp. 74), as all the scheme of that Code bears abundant witness. An execution under a judgment recovered under section 1836a could hardly be intended to go as of course, at least against local assets; certainly it is hard to see why it should if an attachment is illegal. Bostwick v. Carr, supra. The courts might require recourse to the surrogate as in the case of execution against a domestic executor (sections 1825, 1826); but section 1826 would not apply to the case of a foreign executor, unless there were some administration in actual progress. That section requires the surrogate to ascertain what the estate will pay, and to allow only the proper proportion in execution; if it were attempted to apply the section to the case of judgment against a foreign executor, it would involve some tort of administration, which, as I have shown, is itself provided for by elaborate means.

Of course it might be thought that the section 1836a applied merely to the liquidation of a claim for possible proof in a subsequent administration; but that, too, is an extremely unlikely hypothesis. A creditor is provided with a procedure for proving his claims against any executor, domestic or ancillary, and no duplication is to be presupposed, when the whole result is contingent upon some subsequent administration which may never occur. It seems to me, therefore, beyond any reasonable question that section 1836a could not have been meant to apply to local assets, but rather to permit the establishment of claims against foreign executors generally. Since that purpose could not be validly effected unless it is confined to such assets as lie within jurisdictions which may subject representatives of decedents to foreign suits, I think it should be so limited, so as to remain valid.

A note in the Harvard Law Review for February, 1916 (29 Harv. L. R. p. 442), criticizes my original decision because the statute was not construed as intended to allow a judgment for what it might be worth locally, or in such jurisdictions as, having jurisdiction of decedent's assets, might subsequently admit the validity of the judgment under their own laws. I accept the criticism in both respects so far as it is applicable. In New York it is not applicable, for the reasons I have stated; it would be an anomalous feature in the system for the distribution of decedents' estates adopted in New York. So far as concerns foreign jurisdictions the only question is whether the plaintiff should be asked at the outset to show that his judgment might be good somewhere (that is, that the testator had assets in a jurisdiction which would allow its executors to be sued extraterritorially), or whether he might get his judgment for what it might prove worth. Certainly, after Riverside Mills v. Menefee, 237 U. S. 189, 35 Sup. Ct. 579, 59 L. Ed. 910, not even a state court could grant judgment if the defendant showed by way of defense that there was no such jurisdiction; and if Dewey v. Barnhouse, 75 Kan. 214, 88 Pac. 877,

is to be understood to the contrary, it is no longer good law even in Kansas, unless the statute is merely a part of local administration.

If the question be merely as to who has the burden of proof, it is not perhaps a very important matter; but since the proceeding is fundamentally in rem, it would seem a reasonable attitude to compel the actor to show that there was a res which the judgment might affect. However, I do not care to rest this case upon such a distinction; if the plaintiff deem it of any consequence, I will require the executrix to state in what states she has any assets, and if the plaintiff can show that any of those states would recognize a judgment against a foreign executor here, I will consider that question. The plaintiff must serve a demand upon the defendant within five days after this opinion is filed for such an affidavit, the affidavit must be served and filed within five days thereafter, and the cause will be then heard in five days after the affidavit has been served and filed.

Meanwhile the matter will stand open; if the plaintiff serves no such demand within five days, the motion will be granted.