ROBERT HENRY THORBURN, Plaintiff, v. DELLORA R. GATES, as Executrix and Trustee of and under the Last Will and Testament of JOHN W. GATES, Deceased; DELLORA R. GATES, as Executrix and Trustee of and under the Last Will and Testament of CHARLES G. GATES, Deceased; CHARLES E. HERRMANN, the CITY OF NEW YORK, and the PEOPLE OF THE STATE OF NEW YORK, Defendants.

(Supreme Court, New York Special Term, April, 1918.)

Executors and administrators — when foreign, may sue or be sued — process — service — ancillary letters — judgments — when motion to vacate personal service of summons denied — Code Civ. Pro. § 1836-a.

Section 1836-a of the Code of Civil Procedure providing that "An executor or administrator duly appointed in any other state * * * may sue or be sued in any court of this state in his capacity of executor or administrator in like manner * * * as a non-resident," the personal service of a summons made upon a foreign executor while sojourning in this state is good.

Where no ancillary letters have been issued in this state to a foreign executrix, the mere fact that the plaintiff in an action in equity brought on behalf of himself and all creditors of the testator of the foreign executrix to reach certain real and personal property of the decedent alleged to be situated in this state and to have the same applied to the payment of the indebtedness due from said decedent might not conveniently be able to make a judgment in his favor effective by collection is not a ground for denying him the privilege of obtaining in the courts of this state an adjudication of his rights, as any judgment recovered by him against the foreign executrix would be valid under the " due process " clause of the Federal Constitution, and a motion to vacate the personal service of the summons upon said defendant while sojourning in this state will be denied.

MOTION to vacate service of a summons on defendant as executrix, etc.

Robert H. Thorburn, plaintiff, in person.

Byrne, Cutcheon & Taylor (A. L. Humes, of counsel), appearing specially, and not otherwise, for executrix above named.

BIJUR, J.   This is a motion to vacate the service of a summons on the defendant, as executrix, respectively, of John W. Gates and Charles G. Gates, deceased. The action is one in equity brought by the plaintiff, who alleges that he is a creditor of the estate of said John W. Gates, deceased, '' on behalf of himself and all of the creditors of said estate,'' to reach certain real and personal property of said decedent alleged to be situated in this state and to be in possession of the defendant, and to have that property applied *pro rata* to the payment of the indebtedness due by said decedent and for general relief.

It appears upon this motion that the respective wills of the two decedents have been duly probated in the state of Texas; that defendant has by the appropriate tribunal of that state been appointed executrix of said wills; that no ancillary letters have been issued to her in this state and that service of process was made upon her in person while sojourning in this state.

It is claimed in the first instance that such service is valid by reason of section 1836-a of the New York Code of Civil Procedure, which provides that: ''An executor or administrator duly appointed in any other state * * * may sue or be sued in any court of this state in his capacity of executor or administrator in like manner and under like restrictions as a nonresident may sue or be sued. * * * ''

The defendant urges, on the other hand, that if this section be construed to authorize service in the instant case it is to that extent at least unconstitutional as vio-

lative of the principles enunciated in *Pennoyer* v. *Neff,* 95 U. S. 714, and *Goldey* v. *Morning News,* 156 id. 518.

At the outset it is suggested by the defendant that the question involved has been conclusively adjudicated against the plaintiff in two previous suits based substantially on the same cause of action, because motions therein for the relief now sought were decided in defendant's favor. The opinion of Judge Learned Hand upon those motions will be found reported respectively in *Thorburn* v. *Gates,* 225 Fed. Repr. 613, and 230 id. 922. It suffices to say that it is settled by *Smith* v. *McNeal,* 109 U. S. 426, upon the authorities there cited, that the dismissal of a bill on the ground that the court had no jurisdiction is not a bar to a second suit. The only limitation to the contrary which I have been able to find is contained in the opinion in *Glackin* v. *Zeller,* 52 Barb. 147, 151, to the effect that a previous judicial determination that the court was without jurisdiction to hear the controversy is " binding upon the parties," but at page 152 the actual decision is shown to be supported by the further consideration that the party against whom the previous judgment was claimed to be *res judicata* was held bound by way of estoppel, since it was upon his motion that the previous judgment had been obtained. The *Glackin* case is cited with approval upon the latter point in *Bradner* v. *Howard,* 75 N. Y. 417, 420, 421, the Court of Appeals expressly disclaiming any intention to pass upon the effect of a prior determination had it been made upon the initiative of the judge alone.

The validity of the service of the summons in the instant case is therefore open to inquiry. Although I have been greatly aided by the analysis of the question by the learned judge who wrote on the previous motions in the United States District Court, I am unable to agree in the conclusion which he has reached.

It is true that at common law an executor or administrator was not permitted to sue upon any obligation of his decedent outside of the jurisdiction in which he had been appointed. *Vaughan* v. *Northup,* 15 Pet. 1. It is important to observe, however, that this rule was not based upon the absence of jurisdiction in the local court over what is popularly termed a '' foreign executor.''

In *Wilkins* v. *Ellett,* 108 U. S. 256, 258, it is said: '' But the reason for this rule is the protection of the rights of citizens of the State in which the suit is brought; and the objection does not rest upon any defect of the administrator's title in the property, but upon his personal incapacity to sue as administrator beyond the jurisdiction which appointed him.''

The rule was the same as to executors. *Johnson* v. *Powers,* 139 U. S. 156; *Noonan* v. *Bradley,* 9 Wall. 394. The origin of the rule and its rationale is illustrated in some of the older English cases. Thus, in *Carter & Cross's* case, in the English Common Pleas, reported in Godbolts, 33 (27 Eliz.), we find: '' The second point was if the administrator made by a Bishop of Ireland might bring an action here as an administrator, and it was holden that he could not because of the letters of the administration granted in Ireland there could be no trial here in England.''

This doctrine is instructively elaborated in *Price* v. *Dewhurst,* 4 My. & Cr. 76, 80, where the Lord Chancellor (Cottenham) said: '' The first question which occurs is, how can this Court, in administering a testator's property, *take any notice of a will* of which no probate has been obtained from the Ecclesiastical Court of this country. This Court *knows nothing of any will* of personalty except such as the Ecclesiastical Court has, by the probate, adjudged to be the last will.''

The rule, as stated in *Wilkins* v. *Ellett, supra,* is referred to in *Filer & Stowell Co.* v. *Rainey,* 120 Fed. Repr. 718, as meaning that the powers and rights of an administrator or executor are local and limited to the state under whose law he is appointed, except as they may be recognized by the statutes of other states *through courtesy.*

Both aspects of the ground suggested for the denial of the right are mentioned in *Laughlin & McManus* v. *Solomon,* 180 Penn. St. 177, 179, as follows: " The technical ground for refusing a right of action dependent solely on foreign letters testamentary is that it would be giving extra territorial force to the judgment or decree of a foreign court or officer, *and an interference with the jurisdiction of our own courts.* But the more practical ground is that of public policy to prevent assets from being taken out of the state to the possible injury of our own citizens, creditors, who might thus be forced to go to a foreign tribunal to obtain satisfaction of their claims."

It will thus be seen that the rule, both in its origin and application, did not rest on the absence of jurisdiction in our courts over the foreign executor present within our borders, but arose out of the unwillingness of the courts of a domestic state to recognize the foreign appointment. See, also, *Petersen* v. *Chemical Bank,* 32 N. Y. 21, 42, 43; *Taylor* v. *Syme,* 162 id. 513, 518. It is significant that, primarily at least, the rule denied merely the executor's right to sue; his immunity from suit seems to have been taken as the natural and logical corollary, but that extension of the original rule has not been accepted without protest. In *McNamara* v. *Dwyer,* 7 Paige, 239, 241, 242, Chancellor Walworth questions the soundness of the doctrine and points out that the authorities therefor, cited by Judge Story in *Vaughan* v. *Northup, supra,* as

well as his Conflict of Laws, §§ 513, 514, do not sustain it.

The argument that a construction of section 1836-a, which permits the foreign executor to be subjected generally to suit in this state, would render the statute violative of the principles enunciated in *Pennoyer* v. *Neff, supra,* and *Goldey* v. *Morning News, supra,* as also *Conley* v. *Mathieson Alkali Works,* 190 U. S. 406, does not seem to me to be well founded. In *Pennoyer* v. *Neff,* a personal judgment against the defendant obtained without service of process upon him within the jurisdiction of the court which rendered the judgment was held void. In the instant case the defendant has been served personally within this jurisdiction. In the *Goldey* and *Conley* cases jurisdiction over a foreign corporation was held not to have been obtained by service of process upon an officer and director, respectively, casually upon a visit or residing within the state, it appearing that the corporations were not doing business within the state and that the respective persons served were therefore not here upon any business of the corporation. In the instant case it is not sought to obtain jurisdiction by service upon an alleged representative here over a foreign entity cognizable at law, whether a person or a corporation. An action against a foreign executor as such (like an action against a domestic executor) is an action *in personam.* Thus it was said in *Stacy* v. *Thrasher,* 6 How. (U. S.) 44, 60 (see, also, *Johnson* v. *Powers,* 139 U. S. 156, 161) : " This argument assumes that the judgment is *in rem,* not *in personam,* or *that the estate has a sort of corporate entity or unity.* But this is not true, either in fact or in legal construction. *The judgment is against the person* of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care."

Our Appellate Division in *German-American Coffee Co.* v. *Johnston,* 168 App. Div. 31, on denying the right to a plaintiff to serve by publication or without the state *non-resident* administrators appointed by a court of Iowa said: " Jurisdiction to enter a *personal judgment* cannot be obtained by substituted service." This conclusion was reached in the light, among other statutes, of section 1836-a.

As, therefore, by the summons in the instant case, jurisdiction is sought to be obtained over the defendant in an action *in personam* by personal service made upon her without this jurisdiction, I see nothing in this application of section 1836-a (which on its fact authorizes such service) violative of any principle announced in the *Pennoyer, Goldey* or *Conley* cases.

Little light is shed on this particular question by decisions in other states which sustain service of process upon a foreign executor or administrator under similar circumstances, such as *Laughlin & McManus* v. *Solomon,* 180 Penn. St. 177, 179; *Decker* v. *Patton,* 20 Ill. App. 210; *Williams* v. *Welton,* 28 Oh. St. 451, 464; *Dewey* v. *Barnhouse,* 75 Kan. 215, because in most, if not all, of these the arguments here advanced against the validity of the service seem not to have been urged. In *Craig* v. *Toledo, etc., R. R. Co.,* 20 O. N. P. 64, where the constitutionality of a similar statute in Ohio was expressly upheld, the opinion was, I find, handed down by Judge Pratt in the Court of Common Pleas there on May 25, 1895, while the decision in *Goldey* v. *Morning News* was announced only on March 11th of the same year. Since there is no reference in the Ohio opinion to the *Goldey* case, and as the former reviews at some length a number of cases which were substantially overruled in the Goldey opinion, I take it that Judge Pratt was unaware of that decision. Jurisdiction over foreign executors or

administrators has been frequently assumed by the
equity courts of this state prior to the enactment
of section 1836-a. See, for example, *McNamara* v.
*Dwyer,* 7 Paige, 239; *Gulick* v. *Gulick,* 33 Barb. 92;
*Metcalf* v. *Clark,* 41 id. 45, 48; *Field* v. *Gibson,* 20
Hun, 274; *De Coppet* v. *Cone,* 199 N. Y. 56, 61.

It is true that in some of the cases it has been said
that the suit was entertained because of exceptional
circumstances or to prevent a failure of justice, and
it is suggested that the action of the courts in these
instances may be explained by assuming that they have
proceeded on the theory that the executor or adminis-
trator had by bringing the assets of the estate from
the foreign jurisdiction into our own abandoned the
former and voluntarily subjected himself to the latter.
I am not prepared to accept this view, *first,* because it
is not the reason assigned by the courts, but more par-
ticularly because I am unable to understand how, if
jurisdiction over either the person or subject matter
be absent, that fatal defect can be cured by the appli-
cation of a rule of convenience or expediency. On the
other hand, such action is quite explicable and con-
sistent if the rule itself is based not upon an absence
of jurisdiction, but on like considerations of con-
venience and expediency.

It may not be inept to distinguish in passing a recent
decision of the Appellate Division of the Second
Department. *Bostwick* v. *Carr,* 165 App. Div. 55. In
that case section 1836-a is construed as not authoriz-
ing an attachment upon assets belonging to a decedent
in an action against a foreign administrator. The
argument proceeds, however, not upon the absence of
jurisdiction, but upon the inapplicability of our stat-
utes authorizing attachments to the case of executors,
foreign or domestic.

It may be superfluous to add that I am, of course,

not passing upon the soundness of the cause of action alleged by the plaintiff, nor upon the extent to which he may be able to avail of a possible favorable judgment. A judgment against an administrator of a decedent in one jurisdiction has been held not to be even competent evidence against the same or other administrators of the same decedent in other jurisdictions. *Stacy* v. *Thrasher, supra; Low* v. *Bartlett,* 8 Allen (90 Mass.), 259; *McLean* v. *Meek,* 18 How. 16; *McGarvey* v. *Darnall,* 134 Ill. 367, 370; *Johnson* v. *Powers,* 139 U. S. 156, 169. On the other hand, for reasons which are fully explained, the rule is the opposite in the case of executors. *Carpenter* v. *Strange,* 141 U. S. 87; *Hill* v. *Tucker,* 13 How. (U. S.) 458, 466; *Owsley* v. *Central Trust Co. of New York,* 196 Fed. Repr. 412, 418.

Some argument seems to have been made in the federal court by the defendant in answer to plaintiff's contention that he should be allowed to obtain his judgment in this jurisdiction " for what it might prove worth " and regardless of whether it can be made effective in Texas or not It appears to have been urged by the defendant that, since it has not been shown that the appropriate court of Texas would recognize or give effect to the judgment here, it would for that reason be invalid on the authority of *Riverside & Dan River Cotton Mills* v. *Menefee,* 237 U. S. 189. As I read that decision, however, I find only the converse and manifestly sound argument that the mere fact that a judgment *void here* for want of jurisdiction can be defeated in another jurisdiction on that ground, and is not entitled therefore to " full faith and credit," is not a sufficient excuse for permitting it to be entered here. Thus, in speaking of the " full faith and credit " clause and the " due process " clause the Supreme Court said (at p. 197): " The two clauses are harmonious and

because the one may be applicable to prevent a void judgment being enforced affords no ground for denying efficacy to the other, in order to permit a *void judgment* to be rendered."

In the instant case, however, I think that a judgment against the defendant would be valid under the " due process " clause of the Federal Constitution, and the mere fact that the plaintiff might not conveniently be able to make it effective by collecting thereunder is no ground for denying him the privilege of obtaining here an adjudication of his rights. See, also, *Skilton* v. *Codington,* 185 N. Y. 80, 85, expressly approved in *Frank* v. *Vollkommer,* 205 U. S. 521, 529, and *Schoenherr* v. *Van Meter,* 215 N. Y. 548, 553.

Motion denied, with ten dollars costs.