## CONLEY *v.* MATHIESON ALKALI WORKS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 238. Argued April 15, 16, 1903.—Decided May 18, 1903.

Granting the existence of a cause of action, it is not every service upon an officer of a corporation which will give a state court jurisdiction of a foreign corporation. The residence of an officer of a corporation does not necessarily give the corporation a domicil in the State. He must be there officially, representing the corporation in its business. *Goldey v. Morning News,* 156 U. S. 518.

Service in New York of a summons upon a director of a foreign corporation who resides in New York is not sufficient to bring the corporation into court where, at the time of service, the corporation was not doing business in the State of New York.

See also *Geer v. Mathieson Alkali Works, post,* p. 428.

THE case is stated in the opinion of the court.

*Mr. William W. MacFarland* for plaintiff in error.

*Mr. Alfred Ely* for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The plaintiff is a citizen of the State of New York, and the defendant was incorporated in the State of Virginia. The plain-

tiff as assignee of T. T. Mathieson brought this action in the Supreme Court of New York County, State of New York, against the defendant for moneys alleged to be due on a contract made and entered into by Mathieson and defendant. The complaint alleged that the contract was made in the city of New York on the 15th of August, 1893. The articles of agreement show that Mathieson's employment was as general superintendent for the term of eight years, in the erection and general management of the works of the corporation, " and also of their operation, after the same shall have been erected." The defendant had designated no agent upon whom service could have been made, and summons was served on R. T. Wilson and John G. Agar, two members of the board of directors of the corporation, both residents of the city of New York. They were not officers of the company. Before the time for answer had expired, on defendant's motion the cause was transferred to the United States Circuit Court for the Southern District of New York. A motion was made in that court to set aside the summons and service as null and void. Affidavits were presented by both parties, and ruling on them the court said that if the facts stated by the affidavits of the defendant were true, that at the time of the service of the summons and for some months before defendant corporation had ceased to do business in the State, the motion should be granted. But it was said that "the affidavits of complainant are mainly on information and belief, but annexed to them is a letter, the genuineness of which is not questioned, which bears date March 15, 1901, (two months and a half after the alleged cessation of business at Niagara Falls,) and signed by the treasurer of the defendant corporation, in which he speaks of the plant at Niagara Falls as still being operated by the defendant. Under these circumstances the court would not be warranted in granting this motion, in view of the conflict of fact. If, however, the defendant feels assured that the apparent discrepancy can be explained, and is willing to pay the expenses of a reference, it may be sent to a master to take testimony and report to the court whether or not at the time of the service of the summons the defendant corporation was doing business within this State."

A reference to the master was made. After taking testimony (which occupies sixty-two pages of the record), the master reported that, beside its plant at Saltville, the defendant, prior to December 31, 1900, owned and operated a plant for the manufacture of caustic soda and bleaching powder by electricity, located at Niagara Falls, under a patented process, known as the Castner electrolytic process; that on the 31st of December, 1900, it conveyed this plant and all of the property of the defendant, of every kind and description, to the Castner Electrolytic Alkali Company, a corporation organized under the laws of Virginia; that the consideration expressed for the conveyance was one dollar and other valuable considerations, but that the substantial consideration was the entire capital stock of the Castner Electrolytic Alkali Company; that the selling agent for the products manufactured at Niagara Falls, before and after the transfer, was Arnold Hoffman & Co., a corporation organized under the laws of Rhode Island, and had and has its principal place of business in Providence, in that State; that said company was and is the selling agent for the Saltville products, with some exceptions, and that said corporation has a branch office in the city of New York, but the business dealings of the defendant corporation and of the Castner Company with Arnold Hoffman & Co. are carried on through its Providence office; that the defendant, since a period prior to the 31st day of December, 1900, had, and still has, its principal place of business in the city of Providence, and that its books and records are kept there, and it has also an office force, consisting of several employés, that its bank account is also kept in said city and that it has no office in the State of New York—none of its books, records or accounts are kept there, nor has it, since January 1, 1901, sold any of its products there; that a by-law of the company, adopted in 1896, provided that the directors should hold monthly meetings in the city of New York, on the second Wednesday of each and every month in each year, but that it did not appear, however, that meetings had been held in compliance with the by-laws, the fact being that they were held sometimes in Saltville and sometimes in Providence, and, during the year 1901, at least, were held not more than two or

three times in New York city, and then at the branch office of Arnold Hoffman & Co., or at the office of R. T. Wilson & Co., bankers, in Wall street, a member of which firm was a director of the defendant company, and one of its principal stockholders; that the admissions in a letter of the treasurer of the company, March 15, 1901, " are fully explained by the fact that it followed earlier correspondence in which the plan for disposing of the plant at Niagara Falls for the stock of a new company was brought to the attention of Mr. Pell," the president, to whom the letter was addressed.    The master's report concluded as follows:

" Upon the facts thus outlined, it does not appear that the defendant corporation was, at the time of the service of the summons herein, viz., April 18, 1901, doing business within this State.

" The fact that it held the entire capital stock of the Castner Electrolytic Alkali Company and that the operations of that company were carried on under the same management as before December 31, 1900, is not material.    The new corporation was a separate legal entity, and whatever may have been the motives leading to its creation it can only be regarded as such for the purposes of legal proceedings.

" It was that corporation alone which transacted any business in this State, notwithstanding it may have been for all practical purposes merely the instrument of the defendant corporation. *People* v. *Am. Bell Telephone Co.,* 117 N. Y. 241; *United States* v. *The Same,* 29 Fed. Rep. 17."

The plaintiff excepted to the report, the rulings of the master on the admission of testimony, and to his conclusions.    The report was affirmed and the service of summons set aside and declared null and void.    This ruling is assigned as error.

The fundamental proposition of plaintiff in error is that the state court had jurisdiction of the defendant in error, and that therefore the Circuit Court of the United States had jurisdiction.    To sustain the jurisdiction of the state court subdivision 3 of section 432 and section 1780 of the Code of Civil Procedure of the State are cited.    Subdivision 1 of section 432 provides for service upon certain enumerated officers of a foreign corpo-

ration; subdivision 2 provides for the designation of a person by the corporation upon whom process may be served. Subdivision 3 is as follows:

"If such a designation is not in force, or if neither the person designated, nor an officer specified in subdivision first of this section, can be found with due diligence, and the corporation has property within the State, or the cause of action arose therein; to the cashier, a director, or a managing agent of the corporation, within the State."

Section 1780 is as follows:

"SEC. 1780. An action against a foreign corporation may be maintained by a resident of the State, or by a domestic corporation, for any cause of action. An action against a foreign corporation may be maintained by another foreign corporation, or by a non-resident, in one of the following cases only:

"1. Where the action is brought to recover damages for the breach of a contract, made within the State, or relating to property situated within the State, at the time of the making thereof.

"2. Where it is brought to recover real property situated within the State, or a chattel, which is replevied within the State.

"3. Where the cause of action arose within the State, except where the object of the action is to affect the title to real property situated without the State."

These sections, it is insisted, gave the state court jurisdiction, and that it follows that the Circuit Court had jurisdiction. But granting the existence of a cause of action, it is not every service upon an officer of a corporation which will give the state court jurisdiction of a foreign corporation. This was declared in *Goldey* v. *Morning News*, 156 U. S. 518. The case arose in New York, and the question presented was "whether, in a personal action against a corporation which neither is incorporated nor does business within the State, nor has any agent or property therein, service of the summons upon its president, temporarily within the jurisdiction, is sufficient service upon the corporation."

As there was a difference between the rulings of the state court of New York and the Circuit Courts of the United States

on the question, it was elaborately considered "upon principle and in the light of previous decisions of this court." The decisions were examined and the question was answered in the negative, and it was announced, as "an elementary principle of jurisprudence, that a court of justice cannot acquire jurisdiction over the person of one who has no residence within its territorial jurisdiction, except by actual service of notice within the jurisdiction upon him or upon some one authorized to accept service in his behalf, or by his waiver, by general appearance or otherwise, of the want of due service. Whatever effect a constructive service may be allowed in the courts of the same government, it cannot be recognized as valid by the courts of any other government." It was also held that the defendant by filing a petition for removal did not waive defects in the service of summons, and that objection could be made to such service in the Circuit Court of the United States in the same manner as if the action had been originally commenced there. *Goldey* v. *Morning News* was affirmed in *Wabash Western Railway* v. *Brow*, 164 U. S. 271.

The principle announced in *Goldey* v. *Morning News* covers the case at bar. The residence of an officer of a corporation does not necessarily give the corporation a domicile in the State. He must be there officially—there representing the corporation in its business. *St. Clair* v. *Cox*, 106 U. S. 350. In other words, a corporation must be doing business there, and, recognizing the necessity of this, the Circuit Court referred that issue to a master. The decision upon the issue was adverse to the contention of the plaintiff, and we cannot say that it was not sustained by the evidence and the presumptions which must be conceded to the report of a master and the judgment of the lower court. The defendant was competent to convey its property to the Castner Electrolytic Alkali Company, and afterwards make the locality of its own business Providence and Saltville. Whether the transfer to the latter company was fraudulent we certainly cannot decide from this record, and the by-law, which provided for a monthly meeting in New York, could not of itself keep the corporation in New York. The testimony is positive that no business of the corporation

was done in New York city after the transfer of the Niagara Falls plant; that all of the business of the corporation was conducted at Providence, except that of a purely manufacturing character, which was conducted at Saltville.

The following is an extract from the testimony of the secretary and treasurer:

" The offices of the Mathieson Alkali Works at Providence conducted all the business of the company except that of a purely manufacturing character, which was conducted at Saltville. They keep there the general books of account, the books of record, the stock books. They had charge of the general course of the company's affairs and transacted its finances; collected the money and paid the bills. In fact, attended to all the business which generally comes under the conduct of a company's general office. This was done solely at Providence and nowhere else."

And he further testified that all of the goods of the corporation were sold at Providence. The affidavits filed by the defendants were as positive as the oral testimony. The order of the Circuit Court is, therefore,

*Affirmed.*