### WILHELM et al. v. CONSOLIDATED OIL CORPORATION et al.

### No. 970.

District Court, N. D. Oklahoma.
June 28, 1935.

Summers Hardy, N. A. Gibson, and J. H. Maxey, all of Tulsa, Okl., and G. T. Stanford and Frederick H. Wood, both of New York City, for defendants.

FRANKLIN E. KENNAMER, District Judge.

The bill discloses that, at and prior to the transactions of which they complain, the plaintiffs were stockholders of either or both the Prairie Oil & Gas Company and the Prairie Pipeline Company (now by change of name, respectively, the Commonwealth Oil & Gas Company, and the Commonwealth Transportation Company) both Kansas corporations, and they sue as stockholders or former stockholders of such corporations for themselves and for others similarly situated who may care to join. Their complaint has for its genesis the execution of a triparty contract, dated January 14, 1932, between the two Kansas corporations and the defendant, Consolidated Oil Corporation (then the Sinclair Consolidated Oil Corporation), a New York corporation, and includes within its sphere the subsequent transactions of the three named corporations and the other defendant corporations, all subsidiaries of the Consolidated Oil Corporation, manifest in the carrying out of said contract. This questioned agreement had for its object a merger of the three corporations by a conveyance to the defendant, Consolidated Oil Corporation, or its nominee subsidiaries, by the Prairie corporations, of all their assets and the assumption of their liabilities by the contracting defendant, which was to issue its stock directly to the stockholders of the Prairie corporations in lieu of their stock in the latter, at a fixed ratio of exchange. Some of the plaintiffs have made the stock exchange, and at the time of filing suit were holders and owners of stock of the Consolidated Oil Corporation. Some of the plaintiffs are alleged to be citizens and residents of Kansas, and others of Oklahoma. The defendant corporations, other than the Consolidated Oil Corporation, are all subsidiaries of the Consolidated to whom some of the properties of the Prairie companies were conveyed in the consummation of the triparty contract, but none of such subsidiaries are Oklahoma corporations.

The stated objects of the suit are: To have set aside as fraudulent and void all

Lewis J. Bicking, C. R. Nixon, and Guy Wilson, all of Tulsa, Okl., for plaintiffs.

446

transfers of the assets of the Prairie companies made to the defendants; to establish that such defendants held all such assets as trustees for plaintiffs in proportion to their stock in the Prairie companies; for a disclosure of such assets and an accounting as to the same and the earnings therefrom; to establish a lien upon the physical properties within the jurisdiction of this court formerly owned by the Prairie companies and now held by the defendants; for a receiver for such properties, and in the alternative that the defendants be required to pay plaintiffs the proportionate share of the value of all assets of the Prairie companies so conveyed, and, further, as to those plaintiffs who have exchanged their stock in the Prairie companies for stock in the Consolidated Oil Corporation, a rescission of such exchange and the restoration of their status as stockholders of the Prairie companies.

Each of the defendants has appeared specially and moved to quash the subpœna or subpœnas issued against it and the service and return thereon.

The motions of all defendants, save the Consolidated Oil Corporation, are based upon the grounds that the court is without jurisdiction, for the reasons: (1) The venue of this suit, which is governed by section 51 of the Judicial Code (28 USCA § 112), is improperly laid in this district in which none of the defendants is a resident, since the bill presents a substantial federal question; and (2) even if no federal question is presented, and general jurisdiction is founded only on diversity of citizenship, the venue is, nevertheless, improperly laid, since all the plaintiffs are not residents of this district. The motion of Consolidated Oil Corporation is based on the above grounds and the additional ground that the court has acquired no jurisdiction over it by the attempted service, because it is not doing business in the Northern district of Oklahoma and not found therein.

The motions have been sharply contested. The court has had the benefit of helpful oral argument and extensive briefs pro and con. Evidence, mainly by affidavits, has been submitted on the issue as to whether the Consolidated has a presence in this district, rendering it amenable to service of process therein. It is admitted that the defendants, other than the Consolidated, are present and engaged in business within the district. This is the main ground upon which plaintiffs rely to sustain the service upon the Consolidated. It is urged that the Consolidated does business in this district through the other defendants. It appears that the Consolidated owns all of the capital stock of the defendants, Sinclair-Prairie Oil Company and Sinclair Refining Company; that the Sinclair-Prairie Oil Company owns all of the capital stock of the Sinclair-Prairie Oil Marketing Company; and the Sinclair Refining Company owns all of the capital stock of the Sinclair-Prairie Pipeline Company. While the other defendants are operating companies in different branches of the oil industry, the Consolidated is exclusively a holding company. Its properties consist solely of stocks, bonds, notes, cash, evidences of indebtedness, and choses of action of a similar character, and its income is derived from stock dividends, interest on investments and profits realized on the purchase and sale of stocks and securities; it maintains its only office in New York, where all the meetings of both stockholders and directors are held; all of its officers, except an assistant secretary who lives in New Jersey, reside in New York; a majority of its directors also reside in New York, but three of them are residents of this district; one of its directors, Dana H. Kelsy, is also a director of the Sinclair-Prairie Oil Company, and another director, Nelson K. Moody, is president and a director of the Sinclair-Prairie Oil Marketing Company. The Consolidated has no employees outside of New York. It has never held or owned physical properties of any description in Oklahoma or elsewhere, except its furniture and equipment in its New York offices. It has maintained bank accounts in Oklahoma, but these were under the exclusive control of its office in New York, and no one in Oklahoma has ever had authority to make deposits for or withdraw from such accounts. It has numerous other subsidiaries in addition to the defendant subsidiaries. Each of its subsidiaries is a separate corporate entity, and the books and accounts of each are kept free from those of the others, and of the parent company. Each subsidiary has its own board of directors, officers, and employees, and its business affairs are conducted by them as an organization separate from any of its allied corporations; each acquires and holds properties in its own name and transacts all of its business in such manner. Each has its own money

and bank accounts, and the funds of the Consolidated are not commingled with those of any of the subsidiaries, nor are the funds of any subsidiary commingled with those of any other. It would seem that the separate corporate entity of the parent company, and that of each subsidiary, has been scrupulously maintained. It is shown that the firm of accountants makes an annual audit of the books of the Consolidated as well as those of all its subsidiaries. The Consolidated makes an annual report to its stockholders, including a balance sheet and income statement which is styled, "Report of Consolidated Oil Corporation and Subsidiaries." The balance sheet and income statement so included is a consolidation of the balance sheets and income statements of the Consolidated and all companies of which it owns all the stock. It is admitted by the affidavit of Earl W. Sinclair, in evidence on the part of defendant, that "through ownership of the entire capital stock of its subsidiary companies, Consolidated selects the Directors thereof, and indirectly, through such Directors, selects the officers of said companies. The officers of the Consolidated, through consultation with the management of each subsidiary company, control its general business policies. All financing of subsidiary companies is done by Consolidated. Through these means, Consolidated controls and dominates its subsidiary corporations." Various officers of the subsidiary companies are paid from New York by the disbursing agent of Consolidated, but the amount of such salaries so paid is charged to the respective subsidiary company of which the payee is an officer. The defendant subsidiaries all have offices in the city of Tulsa in the Sinclair building, the title to which is in the defendant, Sinclair-Prairie Oil Company. Some of the officers of Consolidated make visits to these Tulsa offices at irregular intervals, for the purpose of consulting with the management of the subsidiaries.

In carrying out the triparty contract between the Consolidated and the two Prairie companies, all the physical assets of the latter were conveyed directly to the subsidiaries of the Consolidated nominated by it to take the title, and such of the properties as were located in Oklahoma and in this district were so conveyed to the defendant subsidiaries, but the subsidiary companies were charged by the Con-

solidated with the value of same and the Consolidated never at any time took title thereto. Other instances of conveyances to these subsidiaries handled in a similar manner are shown.

From a careful consideration of the facts adduced, it cannot be said that the Consolidated is doing business in this district, unless its relationship to its defendant subsidiaries who are doing business here is such as to constitute the doing of business on the part of the Consolidated. The defendant relies mainly on the following cases decided by the Supreme Court: Conley v. Mathieson Alkali Works, 190 U. S. 406, 23 S. Ct. 728, 47 L. Ed. 1113; Geer v. Mathieson Alkali Works, 190 U. S. 428, 23 S. Ct. 807, 47 L. Ed. 1122; Peterson v. Chicago, R. I. & Pac. R. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 251, 69 L. Ed. 634; and Consolidated Textile Corp. v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. Ed. 1047. There is an extensive annotation in 75 A. L. R. beginning at page 1242, under the title "Ownership or control by foreign corporation of stock of other corporations as constituting doing business within state." Most of the authorities cited by both defendant and plaintiffs are collected in this annotation, and it would serve no useful purpose to catalog these cases here. It is suggested by the defendant that these cases establish the rule that, for purposes of jurisdiction, a mere formal separation between parent and subsidiary is sufficient to require the observance of their separate corporate entity by the courts, and a study of these cases makes convincing that such is the rule. In his opinion discussing the situation involved in the case of Cannon Manufacturing Co. v. Cudahy Packing Co., supra, it was said by Justice Brandeis that: "Through ownership of the entire capital stock and otherwise, the defendant dominates the Alabama corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states. The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate.

All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations. * * * The question is simply whether the corporate separation carefully maintained must be ignored in determining the existence of jurisdiction. * * * Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U. S. 174, 177, 178, 43 S. Ct. 312, 67 L. Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U. S. 406, 409–411, 23 S. Ct. 728, 47 L. Ed. 1113, Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841, and Peoples Tobacco Co., Ltd., v. American Tobacco Co., 246 U. S. 79, 87, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction. There is here no attempt to hold the defendant liable for an act or omission of its subsidiary or to enforce as against the latter a liability of the defendant. Hence, cases concerning substantive rights, like Hart Steel Company v. Railway Supply Co., 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148, Chicago, etc., Ry. Co. v. Minneapolis Civic Association, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229, Gulf Oil Corp. v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133, and United States v. Lehigh Valley R. R. Co., 254 U. S. 255, 41 S. Ct. 104, 65 L. Ed. 253, have no application."

In the present case, the separation between the Consolidated and its subsidiaries is not only formal, but real and substantial, and in view of the pronouncement of the Supreme Court in the Cannon Case, and its holdings in the other cases cited, which are binding on this court, no other conclusion can be reached than that the defendant, Consolidated Oil Corporation, is not present and doing business in the district, and is, therefore, not amenable to service of process in this suit.

The objections as to the venue, common to the motions of all defendants, have given the court much concern. It is the contention of plaintiffs that the suit is one of a local nature within section 57 of the Judicial Code (28 USCA § 118), and, if this be correct, the venue is properly laid. On the other hand, the defendants assert that the suit is one in personam, and the venue improper.

It may be observed at the outset that this is not a derivative suit such as was McRoberts v. Independent Coal and Coke Co. (C. C. A.) 15 F.(2d) 157, strongly relied upon by plaintiffs, nor such as were the cases of Carney v. Commonwealth Oil & Gas Co. (D. C.) 5 F. Supp. 304, and the unreported decision [1] in Carney v. Commonwealth Transportation Co., decided by Judge Lindly in the Northern District of Illinois, in 1933, in each of which cases the object of the suit was to set aside and remove the conveyances complained of as clouds on the title of the corporations. Neither of the Commonwealth corporations, formerly the Prairie companies, are parties to this suit, but in the two last-cited cases they were made defendants. And the suit here is not to restore to the Prairie companies the properties conveyed away by reason of the triparty contract and the activities thereunder; neither is it for the purpose of enforcing any corporate right in respect to such companies. The bill is lengthy, and, while drawn apparently with a great deal of thought, the character of action stated, whether in rem or in personam, is somewhat difficult of determination. In their main brief plaintiffs make these statements as to its purport:

" * * * Under the facts the properties in equity still belong to the stockholders of the two Prairie companies and should be seized and held for them unless the defendants make these plaintiffs and other similarly situated who join herein, whole, by payment to them of the fair, intrinsic value of their stock."

"Necessarily the primary relief sought by the petition is to have the court enforce against the property within the court's jurisdiction the equitable lien or

[1] Not for publication.

claim asserted by the plaintiffs in behalf of the stockholders and to set aside and remove the conveyances as clouds on the title of the property. All other matters set up in the petition and relief prayed for are merely in aid of the said principal objects."

Advertence to this conception will be made later herein.

■ As heretofore stated, some of the plaintiffs are stockholders of the Consolidated, having exchanged for its stock their stock in the Prarie companies. It is clear these plaintiffs could be entitled to none of the other relief demanded in the bill until after they have procured a rescission of this stock exchange, and it is equally clear the court would be compelled to obtain personal jurisdiction for such rescission. Chase v. Wetzlar, 225 U. S. 79, 32 S. Ct. 659, 56 L. Ed. 990; McKane v. Burke (C. C.) 132 F. 688. As to such plaintiffs, it seems plain that the suit must be considered as one in personam, and not in rem and local within the purview of section 57 of the Judicial Code. Maya Corporation v. Smith (D. C.) 32 F.(2d) 350, 352. Judge Morris, in that case, makes this entirely sound observation: "A bill which seeks judicial relief from a contract, and also relief under section 57, conditioned upon obtaining equitable relief with respect to the contract, does not present a case under section 57 of the Judicial Code."

Unless section 57 governs the venue, it is the definitely established rule that all the defendants must be competent to sue in this district, and, where jurisdiction is founded only on diversity of citizenship, all plaintiffs are required to be residents of the district in which the suit is brought, in order to constitute that the proper venue. Smith v. Lyon, 133 U. S. 315, 10 S. Ct. 303, 33 L. Ed. 635; Fetzer v. Livermore (D. C.) 15 F.(2d) 462. Therefore, this situation of itself might well be sufficient reason to sustain the motions of the defendants.

[3] However, a long deliberation over the true purport and character of the bill leads to the conclusion that the suit is one in personam as to all plaintiffs. The main and primary relief sought is that the triparty contract and the conveyances by the Prairie companies pursuant thereto, and all other transactions had thereunder, be adjudged fraudulent, ultra vires, and illegal, and be set aside as such. The alle-

gations of the bill seeking an injunction, accounting, and receivership, and the alternative relief demanded, are all incidental to the primary purpose of the bill as above stated. So, if the suit is in personam, and therefore subject to the requirements of section 51 of the Judicial Code as to venue, the fact that some of the plaintiffs are residents of another district, under the rule enunciated by Smith v. Lyon, supra, makes the suit improperly brought in this district.

■ If it be said that the bill is intended, as intimated by the herein quoted excerpts from plaintiffs' brief, as an action to remove clouds upon the title of plaintiffs and other stockholders to the transferred properties, the suit certainly could not be classified as coming within the terms of section 57 of the Judicial Code, since it is evident that the plaintiffs and others as stockholders of the Prairie companies never had any title to the properties, and manifestly could not as stockholders be entitled to the relief sought. The general rule is well established that a stockholder of a corporation is not the owner of the corporate property, either in or out of possession of the corporation, and has no right to assert claim thereto while it is in another's possession. Pomeroy, Equity Jurisprudence (4th Ed.) vol. 3, § 1090, p. 2513. See, also, Wabash Ry. Co. v. American Refrigerator Transit Co. (C. C. A. 8) 7 F.(2d) 335, and Moretti v. Wiley (C. C. A.) 279 F. 558, certiorari denied 260 U. S. 725, 43 S. Ct. 88, 67 L. Ed. 483.

■ Defendants also advance the argument, and support it with considerable authority, that section 57 of the Judicial Code only comprehends suits to enforce liens existing prior to and at the time of the commencement of suit, and that its compass does not include suits to "establish" or "decree" liens as the case here is presented by the money judgment sought in the alternative and the lien prayed for to secure same. This position appears to be sound.

Holding that the suit is controlled as to venue by section 51 of the Judicial Code, makes place for the consideration of the additional objection made by defendants that there is a substantial federal question involved under the allegations of the bill, and therefore jurisdiction being not founded solely on diversity of citizenship, the suit can only be brought in the district of the residence of the defendants,

even if there is also diversity of citizenship between the parties to the suit. Macon Grocery Co. v. Atlantic Coast Line R. R., 215 U. S. 501, 30 S. Ct. 184, 54 L. Ed. 300; Male v. Atchison, etc., R. Co., 240 U. S. 97, 36 S. Ct. 351, 60 L. Ed. 544.

The plaintiffs contend that no federal question is presented by the bill. The bill attacks the triparty contract and the conveyances made thereunder, inter alia, because the Prairie companies were unauthorized to effect same under the Kansas statutes, and because the applicable statute under which the execution and performance of the contract were effected is in violation of the Constitution of the United States (article 1, § 10, cl. 1; Amend. 14), if construed to authorize such action, in that it impairs the obligations or contracts of the plaintiffs who became stockholders of the Prairie companies prior to the enactment of such statute, and in that it deprives plaintiffs of their property without due process of law and deprives them of equal protection of the law and privileges and immunities as citizens of the United States. Plaintiffs say that the allegations as to the constitutionality of the statute are purely hypothetical and anticipatory and cannot be construed to state a cause of action arising under the Constitution of the United States. It appears, however, to the court that there is a serious question as to the constitutionality of the Kansas statute, and that it was the evident intention of the plaintiffs to rely upon this, if necessary, to make out their case. As pointed out by the defendants, however, the construction sought by plaintiffs would allow any plaintiff who wishes to deprive defendants of the venue privilege conferred by federal statute, while attacking both the applicability and constitutionality of the statute, only to allege that such statute is unconstitutional "if" applicable. Such a situation should not have legal sanction and it is only fair to construe the bill as presenting a federal question at the time it was filed. Mosher v. City of Phoenix, 287 U. S. 29, 53 S. Ct. 67, 77 L. Ed. 148. Since the issuance and service of the subpœnas, however, plaintiffs have amended their bill by striking out the allegations of the bill as to the constitutionality of the Kansas statute. Notwithstanding this, defendants urge that since the attempted service conferred no personal jurisdiction over any of the defendants upon the basis of the bill as it was originally drawn, the withdrawal of the federal question from the case could not validate the service where the venue was improper at the time and never waived. According to Brown v. Pond (D. C.) 5 F. 31, and Bull v. Chicago, M. & St. P. R. Co. (D. C.) 6 F.(2d) 329, and other authorities submitted, this contention is correct. It is, however, unnecessary to pass decision thereon because of other controlling reasons which require the granting of the motions.

It is, therefore, the order of the court that the motions of each and all the defendants be, and they hereby are, sustained.