## MILLER
### v.
### TULSA PETROLEUM CO. et al.
### Civ. A. No. 4521.

United States District Court
Middle D. Pennsylvania.
Dec. 22, 1953.

H. R. Van Deusen, Jr., Scranton, Pa., for plaintiff.

Thomas F. Hanahue, Scranton, Pa., Max Rosenn, Wikes-Barre, Pa., for defendant Tulsa Petroleum Co.

J. Charles Hanahue (of O'Malley, Harris, Warren & Hill), Scranton, Pa., for defendant Tulsa Oil Co.

MURPHY, District Judge.

Tulsa Oil Company, a New Jersey corporation, and Tulsa Petroleum Company, a Delaware corporation, move to dismiss plaintiff's action; the former alleging it was not subject to or properly served with process in this district;[1] the latter, failure to state a claim upon which relief may be granted.

■ In disposing of such a motion we must consider as true all well plead allegations of the complaint including the exhibits; but not conclusions of law or unwarranted deductions of fact; viewing them in the light most favorable to the plaintiff, resolving all doubts in favor of sufficiency, Solomon v. Neisner Bros., D.C., 93 F.Supp. 310, affirmed, 3 Cir., 187 F.2d 735, realizing always of course that we are a court of limited jurisdiction.

The problem arose as follows:

December 30, 1946, plaintiff and Tulsa Petroleum Company by Max Friedman, its president, agreed[2] (plaintiff's Exhibit B) at the latter's office in Scranton, Pennsylvania, that a New Jersey corporation be formed to operate gasoline service stations in that state; and that they would convey their respective real estate holdings in New Jersey[3] to the new corporation.[4] In return therefor the agreement[5] provided inter alia:

"The Millers are to receive a 10% interest in the new corporation, and will receive a first mortgage.

"Tulsa Petroleum Company will turn over all of their real estate holdings and will take a chattel mortgage for their holdings."[6]

Plaintiff was to receive a check for $7,000 "and other consideration" to make up 10% of the amount due under the Smith option,[7] the balance to be paid over a 15 year period in installments commencing January 1, 1948.[8]

January 6, 1947, Tulsa Petroleum Company caused Tulsa Oil Company to be organized.[9] Plaintiff alleges that next day he conveyed $81,797.58 in assets to the new company; that Tulsa Petroleum Company conveyed its interest in the East Orange property ($9,754.32)[10] and cancelled and released its $12,606.66 mortgage against plaintiff's property.

As payment for their respective conveyances each party received forthwith a one-half interest (i. e., $67,150.49) in a $134,300.98 duly recorded purchase

---

1. Also moves to quash the return of service of process; the latter seeks a more specific statement.

2. Plaintiff's wife, also present, died July 3, 1950. Plaintiff, a resident of this district, is herein treated as sole owner of the Miller interest.

3. Plaintiff owned three parcels in Newark and Belleville (value $66,607.49); a gasoline service station on leased land in Kearney (value $6,345.77); and by agreement a one-half interest (i./e., $9,754.32) in East Orange property of Tulsa Petroleum Company. The latter held a $12,606.66 mortgage against one of plaintiff's Newark properties.

All but the East Orange property were subject to an option for $74,150.49 held by C. W. Smith, a brother-in-law of plaintiff. Smith's concurrence was a prerequisite to the agreement between the parties.

4. Including the surrender of plaintiff's rights in the East Orange property.

5. By no means a model for certainty or clarity.

6. Cf. "first mortgage", "chattel mortgage". Nothing was said as to the transfer of other assets or the inclusion thereof in the mortgage.

7. See note 3, supra, i. e., 10% of $74,150.49.

8. The agreement made no specific mention of any compensation being paid to plaintiff for surrendering his East Orange interest.

9. With a capitalization of 1000 shares No Par Value Common Stock.

10. Tulsa Petroleum Company claims credit for conveying the whole title, i. e., $19,508.64; transferring cash, notes and accounts of third parties, total $72,043.26; that plaintiff's contributions were for an equal amount.

money mortgage. April 24, 1947, plaintiff received 10 shares fully paid of Tulsa Oil Company stock.[11]

Plaintiff contends that he was to receive a 10% interest in the company, fully paid; that there is therefore a deficiency of 90 shares. Further that the mortgage should be reformed to comply with the agreement so as to reflect the proper interest of each party therein, in accordance with their respective contributions; that defendants should account for all payments made on the mortgage.[12]

Asserting that Tulsa Petroleum Company controls 70% of the Tulsa Oil Company stock, "a closed corporation", the stock of which is not available on the open market, plaintiff seeks a decree of specific performance of the agreement; to enjoin Tulsa Petroleum Company from transferring or hypothecating any of the shares of Tulsa Oil Company, and that it be declared a trustee of 90 shares thereof on plaintiff's behalf; that Tulsa Oil Company be enjoined from issuing or transferring any unissued or authorized stock until plaintiff receives his 90 shares. In lieu of specific performance plaintiff seeks judgment against both defendants.

■ Apart from what the ultimate outcome as to the facts may be, plaintiff pleads an agreement with Tulsa Petroleum Company; that the latter did not comply therewith to his detriment. He has a right, if the trier of the facts believes his version, to have the contract enforced in this court insofar as this court may be able to do so. We do not stop to cite the individual cases. We refer at present only to Fletcher Cyclopedia Corporations, Permanent Ed., Vol. 1, § 191, and cases cited.

The request for a more definite statement will be denied. See our opinion in Metropolis Bending Co. v. Brandwen, D. C., 8 F.R.D. 296, and cases cited.

■ Having accepted the benefits, Tulsa Oil Company must assume the corresponding burdens. See H. Horowitz, Inc., v. Weehawken Trust & Title Co., 1932, 159 A. 384, at pages 385–386, 10 N.J.Misc. 417; Sharon. Herald Co. v. Granger, D.C., 97 F.Supp. 295, at page 301; Girard v. Case Bros. Cutlery Co., 225 Pa. 327, 74 A. 201; Central Trust Co. of Pittsburg v. Lappe, 216 Pa. 549, 65 A. 1111, and see Fletcher Op.Cit. supra, Vol. 1, §§ 204–207, inclusive.

While it may be more convenient to have plaintiff's claim against both defendants considered at the same time, we are of the opinion that Tulsa Oil Company is not properly before this court. The marshal served Joseph Friedman, vice president of the company, a resident of Dickson City, at a bank in Olyphant, Pennsylvania.

By affidavit defendant's president stated it has not qualified to do business in Pennsylvania; its business is confined exclusively to New Jersey; Joseph Friedman had no authority to transact business for it in Pennsylvania, did not so engage and did not reside here for that purpose.

Prior to 1950 defendant's accounting and bookkeeping transactions were handled at Scranton; up to some time in 1951 Mr. Smith on occasion conveyed delivery instructions to the plaintiff from New Jersey through the Tulsa Petroleum

---

11. No other payments are mentioned. Cf. footnote 12, infra.

12. Plaintiff's Exhibit A, dated March 18, 1947, signed by Tulsa Petroleum Company, but not by plaintiff, purporting to be a settlement statement of the transaction is in conflict with plaintiff's averments; e. g., it states that on January 3, 1947, plaintiff received a $7,000 check and a guaranteed acct. C. W. Smith, $8,402.73, making a total payment on plaintiff's mortgage of $15,402.73, leaving a balance due of $56,430.53 (cf. option figure $74,150.49 with that in statement, $72,043.26). Whereas only plaintiff's interest in the corporation was mentioned in Exhibit B, Exhibit A contains the following:

| | |
|---|---|
| Tulsa Petroleum Company | 70% |
| C. W. Smith | 20% |
| George D. and Florence M. Miller | 10% |
| Total | 100% |

Company office at Scranton; one or two corporate meetings were held in Scranton to meet Mrs. Miller's convenience. All other corporate meetings and the business generally was conducted at Newark, New Jersey.

October 1952 plaintiff and Max Friedman,[13] at Scranton, discussed the possibility of a new mortgage arrangement. The proposal was rejected.

The original agreement at Scranton was contingent upon acceptance by Mr. Smith in New Jersey. Any steps taken by defendant company in the way of novation, adoption or ratification occurred there.

■ "There is * * * no general principle or standard whereby it may be conclusively determined in all instances what constitutes 'doing business'. To an extent, the decision in each case depends upon its own peculiar facts. New v. Robinson-Houchin Optical Co., supra [357 Pa. 47, 53 A.2d 79]." Lutz v. Foster & Kester Co., Inc., 367 Pa. 125, at page 129, 79 A.2d 222, 224.

■ Residence of an officer per se is not sufficient. He must be in the state representing the corporation on its business. Conley v. Mathieson Alkali Works, 190 U.S. 406, at page 411, 23 S. Ct. 728, 47 L.Ed. 1113, and see Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, at page 265, 37 S.Ct. 280, 61 L.Ed. 710.

Levy v. Curtis Shoe Company, Pa., 73 Pa.Dist. & Co. 8, and French v. Gibbs Corp., 2 Cir., 1951, 189 F.2d 787, at page 790, are not applicable. Unlike the present situation, in those cases the operative facts giving rise to liability occurred within the jurisdiction of the court wherein suit was brought. See Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541, at page 544.

■ In our judgment there is no evidence of doing business of the quality and quantity required to subject defendant company to service in Pennsylvania.[14] See Shambe v. Delaware & H. R. Co., 288 Pa. 240, 135 A. 755; Allentown Record Co., Inc., v. Agrashell, Inc., D.C., 101 F.Supp. 790; Toothill v. Raymond Laboratories, Inc., D.C., 100 F. Supp. 350.

For the foregoing reasons we will grant the motion of Tulsa Oil Company and deny the motion of Tulsa Petroleum Company.

---

13. A stockholder in defendant company.

14. 15 P.S. § 2852–1011, subds. B and C, was not complied with.