**HUDSON MINNEAPOLIS, INCORPORATED, a corporation, Plaintiff,**

v.

**HUDSON MOTOR CAR COMPANY, a corporation, Defendant.**

Civ. No. 4712.

United States District Court
D. Minnesota, Fourth Division.

Aug. 5, 1954.

Kenneth M. Owen and Horace Hitch, of Dorsey, Colman, Barker, Scott & Barber, Minneapolis, Minn., for defendant.

H. E. Maag, of Coursolle, Preus & Maag, E. John Abdo, Minneapolis, Minn., for plaintiff.

NORDBYE, Chief Judge.

This cause comes before the Court on two motions of defendant, Hudson Motor Car Company, to quash the service of two summonses and to dismiss the action. Both motions are based upon the grounds of the insufficiency of the service of process, and therefore the lack of jurisdiction over the person of defendant.

These motions give rise substantially to the same question which this Court passed upon in Bergholt v. Hudson Motor Car Co., D.C., 124 F.Supp. 716. But plaintiff earnestly urges that the depositions and other showing made herein require a reconsideration of the views set forth in the Bergholt case; that the Court should find here that the Hudson Sales Corporation is in fact an agent of the Hudson Motor Car Company in Minnesota and that therefore the service on November 6, 1953, of the summons on E. J. Carroll, zone manager of the Sales Corporation, constitutes adequate service of process on the Hudson Motor Car Company. In addition, plaintiff contends that the service on February 4, 1954, of the summons on one C. A. J. Hadley, sales manager of the Hudson Motor Car Company and also sales manager of the Hudson Sales Corporation, constitutes legal and sufficient service on the Hudson Motor Car Company, and that this Court therefore has jurisdiction by reason thereof.

The Court has gone over the depositions and the exhibits herein with considerable care. In reading the depositions of William J. St. Onge and Esther I. Keller, it may be observed that honest confusion has arisen on the part of some of the local officers and employees of the Sales Corporation as to the identity of the corporation with which they may have been dealing at times in view of the fact that many of the officers of the Sales Corporation in Detroit are also officers of the Hudson Motor Car Company. But such instances do not militate against the verity of the testimony given in the depositions of Carroll, Thomas, Bott, Simpson, Shirer, Hood and Hadley which clarifies the situation and establishes without question the factual separation of these two legal entities. The showing is persuasive, therefore, that the following fairly summarizes the controlling facts which must be appraised and considered in determining the questions presented upon these motions.

The Hudson Motor Car Company for convenience may be referred to hereafter as the Motor Car Company and the Hudson Sales Corporation may be referred to as the Sales Corporation. The Motor Car Company is a Michigan corporation which manufactures motor cars at Detroit, Michigan. Plaintiff, prior to March 31, 1948, was a distributor in Minneapolis and elsewhere in Minnesota of Hudson automobiles, parts, and accessories. After March 31, 1948, defendant set up as its distributor in Minneapolis, in the place of plaintiff, the

Sales Corporation, a wholly-owned subsidiary licensed to do business in the State of Minnesota. The Motor Car Company is not licensed to do business in this State and does no business herein unless its relationship with the Sales Corporation establishes that fact. The Sales Corporation is a Michigan corporation capitalized at $3,000,000, with a surplus of some $5,000,000 and assets totaling some $18,000,000. Its liabilities are not reflected in the record. It is the wholly-owned subsidiary of the Motor Car Company. It was organized for the purpose of distributing Hudson motor cars throughout certain parts of the United States. As such distributor the Sales Corporation acts as a wholesaler selling to various dealers it has established in the particular zones allotted to it. In addition, however, to that of a wholesaler, it has authority to act as a retailer by the Motor Car Company in certain metropolitan areas.

There are some 20 zones or branch offices of the Sales Corporation operating under certain divisional zone managers. The Motor Car Company also distributes a substantial quota of the cars it manufactures through some 13 independent wholesale distributors. All orders for new automobiles to be distributed in the State of Minnesota are transmitted by the Minneapolis zone office of the Sales Corporation to the Motor Car Company in Detroit. Upon acceptance, their deliveries are made to the Sales Corporation in Detroit, which in turn ships the cars direct either to the warehouse in Minneapolis or to the dealers who may have placed their orders with the Minneapolis office. Invoices are rendered by the Motor Car Company to the Sales Corporation at Detroit for cars delivered and payments are made by the Sales Corporation to the Motor Car Company at that place. All Hudson retail dealers in the Minneapolis zone enter into sales agreements with the local zone manager of the Sales Corporation and make all of their purchases through the Minneapolis office. All employees of the Sales Corporation at the Minneapolis zone are employees of the corporation, paid and supervised by it, and are in no way subject to supervision or discharge by the Motor Car Company. The Minneapolis zone office is housed in a rented office and warehouse building under a lease entered into between the Sales Corporation and the lessor and all rental is paid by the Sales Corporation. However, at the request of the lessor, the performance of the lease is guaranteed by the Motor Car Company. No employee, director, or officer of the Motor Car Company lives in Minnesota. The Motor Car Company maintains no office, warehouse, or inventory in this State, and has no property herein. The bank accounts in this State are maintained exclusively in the name of the Sales Corporation and the deposits therein and withdrawals therefrom are made exclusively by authorized employees of the Sales Corporation. The Motor Car Company neither sells any cars in this State nor does it receive any payment herein for cars that it may sell on orders from the Minneapolis zone office. It makes no purchases herein and all transactions with respect to the sales of cars, parts, or accessories are made in Detroit with the Sales Corporation, which in turn deals directly and exclusively with its various zone managers with respect to such matters in the territory allotted to it. The showing herein is uncontradicted that the Sales Corporation maintains its own bank account, books of record, pays its own employees after deducting the necessary withholding tax, prepares and files separate income tax reports, issues financial statements and holds its own separate Board of Directors' meetings. The Motor Car Company receives from the Sales Corporation from time to time dividends declared on the stock of the Sales Corporation. In addition, however, there is a payment of some $60,000 a month by the Sales Corporation to the Motor Car Company. This monthly payment, after a study, was determined to be reasonable compensation to the Motor Car Company for the facilities furnished to the Sales Corporation at the Detroit

factory and for the services performed at Detroit by the Motor Car Company officers and employees, who are paid their entire salaries by the latter company.

Plaintiff stresses the point that the showing here indicates that the Sales Corporation in Detroit has no identity as such and that its activities are merged with that of the Motor Car Company because it maintains no separate quarters except space allotted in the factory building; that most, if not all, of the officers of the Sales Corporation at Detroit are also officers of the Motor Car Company. And it emphasizes that the salaries of all of the top officers of both concerns are paid exclusively by the Motor Car Company, and that, in reality, therefore, the distinction between the two corporations is one of mere bookkeeping convenience. It is true that the corporate activities of the Sales Corporation are carried on in the factory building of the Motor Car Company. Certain of the officers of the Sales Corporation who assist in carrying on the business of that concern at the factory in Detroit are also officers of the Motor Car Company and keep no record of the time that they spend on Sales Corporation affairs as distinguished from the business of the Motor Car Company. But such time devoted to the Sales Corporation is, in the opinion of the parties, covered by the $60,000 monthly payments to the Motor Car Company. There are, however, employees in an executive capacity at the Detroit headquarters who are solely employed by the Sales Corporation. The Sales Corporation has some 500 full-time employees exclusively paid by that corporation.

Plaintiff, however, recognizes that the showing herein establishes that the Sales Corporation is a separate and distinct operating company, and it does not claim that distinction between the two is one of mere fiction so that the presence of the Sales Corporation in this State constitutes the presence of the Motor Car Company. Rather, it urges that the presence of the Sales Corporation in Minnesota and its activities herein are carried on as an agent of the Motor Car Company and that therefore the latter is present in this State through its agent. In support of this theory, plaintiff relies primarily on Moore Machinery Co. v. Stewart-Warner Corporation, D.C.Calif., 27 F.Supp. 526; Williams v. Campbell Soup Co., D.C.Mo., 1948, 80 F.Supp. 865; Gray v. Eastman Kodak Co., D.C.Pa., 1930, 53 F.2d 864; and Industrial Research Corp. v. General Motors Corp., D.C.N.D.Ohio, 1928, 29 F. 2d 623. The question, therefore, is posed as to whether the showing herein justifies a finding that the Sales Corporation is a mere department, adjunct, or agency of the Motor Car Company so that the presence here of the Sales Corporation constitutes presence of the Motor Car Company.

■■  Perhaps in a certain sense every subsidiary corporation wholly dominated and controlled by a parent corporation may be considered, realistically speaking, as a department of the latter. But, as the court stated in Commerce Trust Co. v. Woodbury, 8 Cir., 1935, 77 F. 2d 478, 487,

"Few questions of law are better settled than that a corporation is ordinarily a wholly separate entity from its stockholders, whether they be one or more. [Citing cases.] Likewise, we think it must be conceded that neither ownership of all of the stock of one corporation by another, nor the identity of officers in one with officers in another, creates a merger of the two corporations into a single entity, or makes one either the principal or agent of the other. [Citing cases.] But notwithstanding such situation and such intimacy of relation, the corporation will be regarded as a legal entity, as a general rule, and the courts will ignore the fiction of corporate entity only with caution, and when the circumstances justify it, and when it is used as a subterfuge to defeat public convenience, justify wrong, or perpetrate a fraud."

In that case, the court recognized the right of a receiver of a parent company under order of court to take over the

property of a subsidiary and to disregard the fiction of corporate entity when the subsidiary was a mere department of the parent. That was a substantive proceeding where equitable principles controlled.

■ Here, of course, there is no claim or contention that the organization of the Sales Corporation was motivated by any fraud or wrong or as a subterfuge. Here, there is no occasion for equity to pierce the so-called corporate veil. For reasons which the Motor Car Company deems sufficient, the Sales Corporation was organized to distribute Hudson motor cars in Minnesota and elsewhere. That the Sales Corporation is dominated and controlled, immediately and completely, by the Motor Car Company is evident from the showing herein. But the element of control and complete domination does not make the Sales Corporation the agent of the Motor Car Company. Cannon Mfg. Co. v. Cudahy Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. The Cudahy case is controlling here, and the factual considerations before the Supreme Court were substantially the same as those present here. Plaintiff there brought an action in North Carolina for breach of contract against the Cudahy Packing Company, a Maine corporation. Service of process was obtained in North Carolina on the Cudahy Packing Company of Alabama, which marketed the products of Cudahy of Maine in the State of North Carolina. The Alabama corporation bought their entire supply of products from the Maine corporation and sold to dealers within the State of North Carolina. Cudahy of Maine owned the entire capital stock of the Alabama corporation. It dominated that company "commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the Cudahy products in other states." 267 U.S. at page 335, 45 S.Ct. at page 251. In holding that the two corporations were separate and that the business of the Alabama corporation in North Carolina did not become the business of the Maine corporation, the court stated, 267 U.S. at page 336, 45 S. Ct. at page 251:

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed 594. It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 177, 178, 43 S.Ct. 312, 67 L.Ed. 596. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409–411, 23 S.Ct. 728, 47 L.Ed. 1113; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841, and People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U. S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute, no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction. There is here no attempt to hold the defendant liable for an act or omission of its subsidiary or to enforce as against the latter a liability of the defendant. Hence, cases concerning substantive rights,

like Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148; Chicago, etc., Ry. Co. v. Minneapolis Civic Association, 247 U.S. 490, 38 S.Ct. 553, 62 L.Ed. 1229; Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; and United States v. Lehigh Valley R. R. Co., 254 U.S. 255, 41 S.Ct. 104, 65 L. Ed. 253, have no application."

The $60,000 a month paid by the Sales Corporation to the Motor Car Company as reimbursement to the Motor Car Company for facilities furnished and for the time expended by the officers of the Motor Car Company in the business of the Sales Corporation in Detroit is, as far as the showing here indicates, a bona fide arrangement between the parties after a study and appraisal of the value of such contribution to the Sales Corporation. If these two companies desire to conduct their intimate internal affairs on that basis, it cannot be characterized on this motion involving sufficiency of the service of process as a mere bookkeeping arrangement or pretense. If the two companies are content to carry on their business relations in this manner, plaintiff is in no position in this proceeding to complain so long as the arrangement is a bona fide one and not contrary to public policy. And if, by reason of the arrangement with the Motor Car Company, the Sales Corporation lacks an independent identity at the factory office in Detroit, the persuasive fact is that the Motor Car Company has no identity in Minnesota, while the Sales Corporation here has its own independent headquarters, its office with its own bank account, books, and employees, and all the attributes of a functioning corporation.

In addition, plaintiff emphasizes certain aspects of the showing herein which it contends support its theory of principal and agent. It recites in detail the various provisions of the contract which the defendant entered into with each of the 20 zone managers, including Minnesota. There is no sales contract between the Motor Car Company and the Sales Corporation as such. Each zone, however, has a separate contract signed in behalf of the Sales Corporation by the local zone manager. Plaintiff recites that the contract with the Minneapolis zone, for instance, which is signed by E. J. Carroll, the manager, in behalf of the Sales Corporation, controls the business operations of the zone in such minute detail that the relationship of principal and agent must be deduced therefrom, rather than that of vendor and vendee. These same considerations on substantially the same factual showing were urged in the Bergholt case and decided adversely to plaintiff's contentions. The terms of the distributorship agreement do not impress upon the parties the relation of principal and agent. The provisions thereof appear to conform with the usual agreements one would expect to find in a contract between a manufacturer of motor cars and its distributor. In fact, many of the same provisions are found in the distributor's sales agreement between plaintiff and defendant when the former held the distributorship contract for Hudson motor cars in the Minneapolis zone prior to March 31, 1948. In any event, the same restrictions and the same covenants likewise are imposed upon some 13 other distributors operating in various parts of the United States who have no connection whatsoever with the Motor Car Company except as distributors of its automobiles. True, some of the contract provisions may seem entirely inapposite as between a parent corporation and its subsidiary distributor. But it is to be gathered from the showing herein that the Motor Car Company is informed that, under the law, the same type of distributor's contract is required as between it and its various distributors, whether the latter are subsidiaries or independent concerns. Considerable emphasis is placed by plaintiff on certain language employed in the distributor's contract from which it is contended that the agreement is in reality one that the Motor Car Company makes with the manager of the zone as an individual rather than with the Sales Corporation as a corporate entity, and hence is

a mere pretense as a contract between the two corporations. For instance, there are provisions in the contract supplement which read:

"This agreement is a personal one, having been entered into by Hudson in reliance upon and in recognition of the individual or individuals who signed this agreement on behalf of Distributor, and who, in accordance with Distributor's representation to Hudson, will at all times during the effective period of this agreement actively and substantially participate in the ownership and/or operation of the distributorship. Hudson is entering into this agreement in reliance upon that representation."

And also,

"* * * Distributor agrees not to make, cause or permit any substantial change in ownership of (or financial interest in) Distributor or the distributorship, nor any substantial change in the active managerial personnel of the distributorship, without first obtaining Hudson's written consent."

Further,

"Distributor acknowledges that an adequate net working capital is necessary for the proper operation of his business in accordance with minimum Hudson standards. Therefore, Distributor agrees to have and maintain at all times, and actually employ in the business, at least such amounts of net working capital as Hudson shall specify from time to time as being reasonably required for such purposes."

But in considering these excerpts from the distributorship agreement with the Minneapolis zone, it should be remembered that this language appears in all of the distributorship contracts whether with an independent distributor or with a branch of the Sales Corporation. This 'anguage, while entirely appropriate to an independent distributor, may seem superfluous and wholly unsuitable to a contract between the parent and division of a subsidiary corporation. But, nevertheless, such provisions of the contract cannot be distorted so as to spell out the relationship of principal and agent or a personal contract between the Motor Car Company and the zone manager as an individual. The deductions which plaintiff seeks to draw from the terms of the distributorship agreement are entirely dissipated when it is recognized that the same contract and the same supervision of the various distributors apply with the same force and effect to independent distributors as they do to the various branches of the Sales Corporation. And while the distributorship contract may include many phases of detailed control over the activities of the distributor, it is not without some significance that the parties negate any principal and agent relationship by the specific provision in the contract which reads:

"The relation created between the parties by this agreement is that of vendor and vendee. Distributor shall not be the agent or representative of Hudson for any purpose, and shall have no power or authority to assume, incur or create any liability, obligation or restriction on behalf of Hudson, or to bind Hudson in any respect."

The domination, control, and management of the Sales Corporation by the Motor Car Company is undoubtedly as complete and absolute as the stock control and the identity of the officers would indicate. But such a situation in and of itself does not destroy the corporate entity of the Sales Corporation. Here, we have no public policy with respect to the Motor Car Company which would justify the Court in striking down for jurisdictional purposes the subsidiary through which it sells most of its cars. Here, we do not have an action which seeks to recover against the parent because of wrongful acts of its subsidiary, or against a subsidiary because of wrongful acts of its parent. Cases dealing with substantive rights, therefore, have no ap-

plication. No persuasive argument is made to appear why the Court should attempt, under these circumstances, to disregard or strike down an arrangement between a parent and subsidiary as a mere fiction and to designate their activities together as a principal and agent arrangement when all the corporate tests for an independent legal entity emphasized in the Cudahy case are present.

■ There is only one other aspect of the motion which suggests comment. Service was made on C. A. J. Hadley on February 4, 1954. Hadley is sales manager of the Sales Corporation and also of the Motor Car Company. He was in St. Paul, Minnesota, when service was obtained upon him in this action. He contends that he was here solely on the business of the Sales Corporation. Granted that his coming here had something to do with the interest of the Motor Car Company as well, such fact would not create the presence of the Motor Car Company in this district. There is an absence of a showing that any sporadic visits of Hadley, or any other representative of the Motor Car Company in this district, are so continuous or substantial as to constitute the doing of business by the Motor Car Company in this State. The service on Hadley in this State, therefore, did not constitute legal and sufficient service on the Motor Car Company. Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047. See discussion as to what constitutes presence of a corporation so as to satisfy demands of due process in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

The controlling cases are considered in the Bergholt decision. As stated, however, plaintiff also relies upon Williams v. Campbell Soup Co., supra, where there was an admission that the subsidiary was the sales agent of the parent, and on Gray v. Eastman Kodak Co., supra, where the court did not cite any cases to support its conclusion but relied upon the statement of the parent that it had a place of

business where service was obtained under the patent venue statute. And in Moore Machinery Co. v. Stewart-Warner, supra, the court found that the parent was doing business where service was obtained, stating at page 529 of 27 F.Supp.:

"Defendant sent into California its agents, called factory men, who instructed plaintiff in sales policies and methods; held meetings of plaintiff's salesmen and instructed them in the sales methods they were to use; held meetings of salesmen, jobbers, and dealers; together with agents of plaintiff, called upon dealers and jobbers in an endeavor to aid plaintiff's agents in making sales; gave plaintiff advice regarding methods of advertising; assisted plaintiff in servicing Alemite products theretofore sold; actively stimulated and promoted sales of products. These facts are amply shown by the correspondence between the parties."

With reference to Industrial Research Corp. v. General Motors Corp., supra, the following observations made in the Bergholt decision are pertinent here:

"There remains undisposed of only the contention of plaintiff that the facts of the present case are outside the Cudahy case because they show less of a separation of corporate identities. He relies primarily upon Industrial Research Corp. v. General Motors Corp., supra. In that case, the court did find that the General Motors Corporation was subject to process in Ohio by reason of the activities in that state of the General Motors Truck Co. It is true that the relationship between those companies was insulated by the intermediate presence of two other corporations, yet the case is distinguishable from the one at bar. First, there the corporate articles of the parent corporation showed that it was organized to *manufacture and deal in* automobiles, etc., and to generally conduct an automobile business in all its

branches. Second, the parent corporation failed to produce, on motions to quash service, evidence of the separate identities of the corporations. Therefore, the court held that in the absence of proof of such facts, they would be presumed not to exist. Third, it was judicially noticed by the court that the General Motors corporation did nothing in itself to conduct its business—that if it did business at all it did so through these subsidiaries."

It seems evident, therefore, that these cases furnish no persuasive authority in support of plaintiff's position herein. In conclusion, it may be observed that plaintiff claims no prejudice or estoppel by reason of any reliance upon the intimate relationship which may exist between these two corporations, nor that it acted upon the assumption that the Sales Corporation was the mere *alter ego* of the Motor Car Company. It is not contended that defendant withdrew from this State in 1948 in order to defeat any claim plaintiff may have for alleged breach of contract. And the presence of defendant in this State must be determined as of the time of the service herein. It should be reiterated that here there is no fraud, no wrongdoing, and no public policy involved in the utilization of a subsidiary corporation by defendant as an outlet for the distribution of its motor cars. Consequently, if the Motor Car Company desires to sell its cars in Minnesota through a wholly-owned subsidiary, it has that unquestioned right without being present in this State for the purposes of jurisdiction, so long as the Sales Corporation functions as a corporate entity and meets the tests laid down in Cannon Mfg. Co. v. Cudahy Co., supra. This it does.

Upon this showing, therefore, it appears that the Motor Car Company is not doing business in the District of Minnesota, either as a corporate entity or through an agent, and therefore is not present here. Service of the summonses, therefore, on E. J. Carroll and C. A. J. Hadley is hereby quashed and this action is dismissed. It is so ordered.

An exception is allowed.